[No. D049805. Fourth Dist., Div. One. Sept. 10, 2008.]

JOHN T. MILLS et al., Plaintiffs and Appellants, v.
U.S. BANK, Defendant and Respondent.

874

## Counsel

David L. Kahn for Plaintiffs and Appellants.

Foley & Lardner, Michael P. McCloskey; and Kenneth S. Klein for Defendant and Respondent.

## Opinion

**IRION, J.**—This action is before us for the third time on appeal.[1] Plaintiffs and appellants John T. Mills; Peter A. and Cameron Howe Ministri; Thomas B. and Rosemary K. Mills; Jonathan A. Rauh; Eric W. Holt; Chris D. Wong; Donne Goodrich, as the executor of the estate of Juliette P. Goodrich;[2] Evelyn W. Howe; and the Howe Family Corporation (collectively, Plaintiffs) challenge three rulings by the trial court with respect to defendant and respondent U.S. Bank. On their appeal from the judgment, Plaintiffs challenge (1) the order granting U.S. Bank's demurrer to the fifth amended complaint's eighth and ninth causes of action for (a) breach of presentment and transfer warranties in violation of California Uniform Commercial Code sections 4207 and 4208,[3] and (b) negligence in violation of the California Uniform Commercial Code; (2) the trial court's ruling on a motion to compel discovery; and (3) the order granting summary judgment in favor of U.S. Bank on the fifth amended complaint's fifth and sixth causes of action for common law negligence and gross negligence.

As we will explain, we conclude that Plaintiffs' arguments are without merit, and accordingly we affirm the judgment.

---

[1] Our unpublished previous opinions in this matter are *Mills v. First Union National Bank of Maryland* (June 24, 2004, D041686) (*Mills I*) and *Mills v. Paine Webber* (Apr. 13, 2006, D046173) (*Mills II*). We have also considered two petitions for a writ of mandamus in this action.

[2] Plaintiff Juliette Goodrich died during the pendency of this litigation, and the executor of her estate, Donne Goodrich, is now a party.

[3] Unless otherwise specified, all further statutory references are to the California Uniform Commercial Code.

I

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, who were investors in Third Eye Systems, LLC, wrote checks payable to Third Eye Systems, LLC, in March and April 2000 to purchase their investment units.[4] Nine of the checks indicated "Third Eye Systems, LLC" as the payee; one of the checks indicated "Third Eye," and one indicated "Third Eye Systems." The checks were not negotiated by Third Eye Systems, LLC, but by a different entity, Third Eye Systems Holdings, Inc., which presented the checks for deposit into its account at U.S. Bank. U.S. Bank accepted the checks for deposit. The checks were marked with various endorsements, including "For Deposit Only Third Eye Systems Holdings," "Third Eye Systems LLC For Deposit Only," "For Deposit Only," and "For Deposit Only Credited to the Account Of The Within Named Payee," but they were not properly endorsed to transfer title from Third Eye Systems, LLC, to Third Eye Systems Holdings, Inc.

According to Plaintiffs, they were injured when the funds from their checks were deposited into the account of Third Eye Systems Holdings, Inc., because, among other things, Third Eye Systems, LLC, was worth 75 percent less without the funds from Plaintiffs' investments. Further, Plaintiffs claim that because they did not have an ownership interest in Third Eye Systems Holdings, Inc., they could not access its assets (purchased with Plaintiffs' funds) to recoup their eventual investment losses.

### A. *The Nature of This Litigation and the Operative Complaint*

In this action, Plaintiffs sued various entities based on the fact that the checks were not deposited into the bank account of Third Eye Systems, LLC. They sued both (1) the drawee banks and brokerage firms, i.e., the institutions that issued the checks Plaintiffs wrote to purchase their investment units, and (2) the depositary bank—U.S. Bank—i.e., the bank at which Third Eye Systems Holdings, Inc., deposited Plaintiffs' checks. In *Mills I* and *Mills II*, we affirmed the trial court's orders disposing of Plaintiffs' claims against the drawee banks and brokerage firms. The issues in this appeal concern only U.S. Bank.

---

[4] The payment by John Mills was in the form of checks issued by BT Alex. Brown, Inc., on his behalf.

The operative fifth amended complaint contains four causes of action against U.S. Bank.

The fifth and sixth causes of action are for common law negligence and gross negligence, alleging that U.S. Bank negligently or with gross negligence breached its duty of "ordinary commercial banking care in the handling and depositing of Plaintiffs' checks" by "failing to take commercially reasonable steps to ensure that all of the Plaintiffs' checks were endorsed by 'Third Eye Systems, LLC' and deposited in the bank account of 'Third Eye Systems, LLC.' "

The eighth and ninth causes of action are based on alleged violations of the California Uniform Commercial Code. The eighth cause of action alleges a statutory cause of action for negligence that Plaintiffs title "Negligence under the Uniform Commercial Code." The ninth cause of action asserts that U.S. Bank breached the presentment and transfer warranties described in sections 4207 and 4208.

In all four causes of action Plaintiffs allege that they "suffered damages in the face amounts of the checks . . . plus interest and costs."

## B. *The Federal Action*

Concurrently with the litigation of this action, Plaintiffs were litigating against Third Eye Systems, LLC, Third Eye Systems Holdings, Inc., and the principals of those companies, Saliha Miller and Burke Hovde, in federal court (the federal action).[5] The federal action was filed in April 2001.[6] This action was filed in March 2002.

In the federal action, the operative complaint alleged 14 separate claims, including breach of contract, fraud, breach of fiduciary duty, and violation of the securities laws of the States of Washington and California. Many of the claims were premised on the allegation that Plaintiffs' checks were improperly deposited in the bank account of Third Eye Systems Holdings, Inc., and that the funds were thereafter improperly used for purposes other than benefiting Third Eye Systems, LLC.

---

[5] The plaintiffs in the federal court action were Plaintiffs in this action, as well as several other individuals who had invested in Third Eye Systems, LLC (collectively, the federal plaintiffs). U.S. Bank has requested that we take judicial notice of certain pleadings from the federal action. We grant the request for judicial notice, as we may take notice of the records of the federal courts pursuant to Evidence Code section 452, subdivision (d).

[6] The federal action was originally filed in superior court and was then removed to federal court in May 2001.

In 2004, Judge Dana M. Sabraw held a bench trial in the federal action. As described in Judge Sabraw's findings of fact and conclusions of law, the only claim that the federal plaintiffs chose to present at trial was their claim for rescission on the ground that the securities were not registered as required under Washington law.[7] Judge Sabraw ruled that the securities were required to be registered under Washington law because they did not fall within that state's private offering exemption. As a remedy, Judge Sabraw ruled that the federal plaintiffs, with the exception of John Mills, were entitled to rescission plus interest and costs, conditional on their tender of the securities to the defendants. John Mills was denied the remedy of rescission pursuant to the doctrine of in pari delicto because he participated in the promotion of the securities and received a commission for his services, and thus was "equally responsible for the forbidden transactions."[8] Judgment was entered in the federal action in March 2004 (the federal court judgment).

C. *The Trial Court Sustains U.S. Bank's Demurrer to the Eighth and Ninth Causes of Action*

In this action, U.S. Bank demurred to the eighth cause of action (for statutory negligence under the California Uniform Commercial Code) and the ninth cause of action (for breach of certain presentment and transfer warranties under §§ 4207 and 4208). As to the eighth cause of action, U.S. Bank argued that the California Uniform Commercial Code did not give rise to a cause of action for negligence in the situation presented by this case, and that in any event, it satisfied its duty of care by using an automated check processing system. As to the ninth cause of action, U.S. Bank argued that as the drawers of the checks, Plaintiffs were not authorized by sections 4207 and 4208 to sue the depositary bank, and that in any event, any such claim would be barred by the statute of limitations.

The trial court sustained the demurrer. The trial court stated that it "found each of [U.S. Bank's] arguments highly persuasive."

---

[7] According to a statement by Judge Sabraw in a subsequent order, the federal plaintiffs "voluntarily elected to proceed at trial on only the rescission claim," although the court earlier had denied the defendants' motion for summary judgment on the federal plaintiffs' 13 other claims for relief. As stated in a declaration by Plaintiffs' counsel filed in opposition to the summary judgment motion in this action, "[i]n order not to unnecessarily prolong the federal action on the relatively simple sale of unregistered securities claim for relief [in the federal action,] Plaintiffs (1) voluntarily dismissed all of their other claims for relief in the federal action, and (2) filed this separate Action against the Defendant less than two months after their Third Amended Complaint in the federal action was filed."

[8] As part of the bench trial, Judge Sabraw also decided nine separate claims for relief against John Mills that were pled in the counterclaim. Judge Sabraw ruled that the counterclaimants did not meet their burden of proof.

## D. *The Trial Court Denies Plaintiffs' Motion to Compel Discovery*

In the course of this litigation, Plaintiffs sought to discover (1) the bank records of Third Eye Systems, LLC, and Third Eye Systems Holdings, Inc., held by U.S. Bank; and (2) documents concerning U.S. Bank's training of tellers concerning the depositing of checks into the proper account, and whether such training was followed in the case of Plaintiffs' checks.

U.S. Bank opposed the motion to compel, arguing among other things that (1) it was obligated to protect customer privacy, and it would be subject to a lawsuit if it turned over the customers' private records without compulsion by legal process; (2) the discovery concerning teller training was not reasonably calculated to lead to the discovery of admissible evidence; and (3) in any event, Plaintiffs had failed to comply with the rules for filing a full and complete separate statement in support of their motion to compel as required by California Rules of Court, former rule 335.[9]

The trial court denied the motion to compel on both substantive and procedural grounds. It stated, "Plaintiffs have failed to convince the Court that [U.S. Bank's] objections are unfounded or should be disregarded with respect to the discovery requests at issue. The motion itself is confusing and Plaintiffs' main legal points are unsupported by any legal authority (e.g., the argument that there is no third party right of privacy with respect to Third Eye Systems, LLC and Third Eye Systems Holdings, Inc.). [¶] Further, motions to compel require an accompanying separate statement. While Plaintiffs[] have submitted what they titled a separate statement, it fails to comply with [former rule] 335 and has been disregarded."

## E. *The Trial Court Grants U.S. Bank's Motion for Summary Judgment on the Remaining Fifth and Sixth Causes of Action for Common Law Negligence and Gross Negligence*

U.S. Bank brought a motion for summary judgment on the remaining two causes of action, namely, the fifth and sixth causes of action for common law negligence and gross negligence.

U.S. Bank set forth three separate and independent bases for its summary judgment motion. First, U.S. Bank argued that the federal court judgment gave rise to collateral estoppel, in the form of issue preclusion, which barred

---

[9] All further rule references are to the California Rules of Court. Former rule 335 has now been renumbered as rule 3.1020.

Plaintiffs' causes of action for negligence and gross negligence. Second, according to U.S. Bank, because Miller and Hovde simply could have supplied the missing endorsements from Third Eye Systems, LLC, had U.S. Bank initially refused to deposit the checks into the account of Third Eye Systems Holdings, Inc., Plaintiffs could not establish that U.S. Bank's alleged negligence in accepting the checks without the proper endorsements caused Plaintiffs' investment losses. Third, U.S. Bank argued that under the facts presented, Plaintiffs could not establish that U.S. Bank owed them a duty of care.

After the parties completed their briefing of the summary judgment motion, the trial court issued a written tentative ruling, stating that the motion "will be ruled upon following further discussion at oral argument" on the issues of duty, causation and whether Plaintiffs were damaged in light of the outcome in the federal action. After hearing argument and taking the matter under submission, the trial court issued a written ruling. The trial court stated, "The Court, having taken the matter under submission and having considered the parties['] arguments . . . confirms its tentative ruling. The Court was not persuaded by the points made by Plaintiffs at the hearing. Accordingly, the motion is granted, effectively doing away with the case as it pertains to U.S. Bank." The trial court then entered judgment in favor of U.S. Bank.

In Plaintiffs' appeal from the judgment, they challenge (1) the ruling sustaining the demurrer to the eighth and ninth causes of action; (2) the ruling denying their motion to compel discovery; and (3) the ruling on the motion for summary judgment.

## II

## DISCUSSION

### A. *Plaintiffs' Challenge to the Ruling Sustaining the Demurrer to the Eighth and Ninth Causes of Action Is Without Merit*

#### 1. *Standard of Review*

" 'On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650 [43 Cal.Rptr.3d 434].) In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well

as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601].) "If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513] (*Quelimane*).)

### 2. *The Ninth Cause of Action*

The ninth cause of action alleges that U.S. Bank breached certain present-ment and transfer warranties under sections 4207 and 4208.[10] The cause of action is titled "Third Party Beneficiaries of U.S. Bank's Presentment and Transfer Warranties under the Uniform Commercial Code §§ 4207–4208 to the Payor Banks." According to the fifth amended complaint, "Plaintiffs as drawers of checks whose accounts were charged are 'payors' within the meaning of [section] 4207 of the Uniform Commercial Code, and may maintain an action against the collecting bank (U.S. Bank) based on that section's warranties. U.S. Bank breached those warranties because Plaintiffs' checks were not endorsed by 'Third Eye Systems, LLC' and deposited in the bank account of 'Third Eye Systems, LLC.' "

#### a. *The demurrer questions the applicability of sections 4207 and 4208*

We begin with a review of the statutory provisions cited in the ninth cause of action.

■ Section 4207 describes the following transfer warranty:

"(a) A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that all of the following are applicable:

---

[10] "A few basic concepts are useful to facilitate the discussion. A check typically involves three parties, (1) the 'drawer' who writes the check, (2) the 'payee', to whose order the check is made out, and (3) the 'drawee' or 'payor bank', the bank which has the drawer's checking account from which the check is to be paid. In form, a check is an order to the drawee bank to pay the face amount of the check to the payee. After receiving the check, the payee typically indorses it on the back in the payee's own name, and then deposits it in the payee's account in a different bank, the 'depositary bank'. The depositary bank credits the check to the payee's account, and sends the check through the check clearing system to the payor bank for ultimate payment from the drawer's account. Any bank through which the check passes in the clearing process is an 'intermediary bank'. Any bank handling the check for collection, including the depositary bank but excluding the payor bank, is referred to as a 'collecting bank.' " (*In re McMullen Oil Co.* (Bankr. C.D.Cal. 2000) 251 B.R. 558, 566–567 (*In re McMullen*), fns. omitted.)

"(1) The warrantor is a person entitled to enforce the item.

"(2) All signatures on the item are authentic and authorized.

"(3) The item has not been altered.

"(4) The item is not subject to a defense or claim in recoupment (subdivision (a) of Section 3305) of any party that can be asserted against the warrantor.

"(5) The warrantor has no knowledge of any insolvency proceeding commenced with respect to the maker or acceptor or, in the case of an unaccepted draft, the drawer.

"(6) If the item is a demand draft, creation of the item according to the terms on its face was authorized by the person identified as drawer." (§ 4207, subd. (a).)[11]

The statute plainly describes the *transferee* as the recipient of the warranty. Because Plaintiffs were the *drawers* of the checks, they could not have been the *transferees* of the checks.

Section 4208 sets forth presentment warranties, which apply when a check is presented for payment to the bank of the person who wrote the check:

"(a) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, warrant to the drawee that pays or accepts the draft in good faith that all of the following apply:

"(1) The warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft.

"(2) The draft has not been altered.

---

[11] The statute further states that "[a] person to whom the warranties under subdivision (a) are made and who took the item in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the item plus expenses and loss of interest incurred as a result of the breach." (§ 4207, subd. (c).)

"(3) The warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized.

"(4) If the draft is a demand draft, creation of the demand draft according to the terms on its face was authorized by the person identified as drawer." (§ 4208, subd. (a).)[12]

In this case, the drawee banks were Plaintiffs' banks,[13] and U.S. Bank was the "person" obtaining payment at the time of presentment. (§ 4208, subd. (a).) Thus, section 4208, as applied here, indicates that in presenting the checks for payment to Plaintiffs' banks, U.S. Bank was making certain warranties *to Plaintiffs' banks*, but not to Plaintiffs themselves.

In its demurrer, U.S. Bank argued that on its face, neither section 4207 nor section 4208 describes warranties inuring to the benefit of the drawers of the checks, who in this case would be Plaintiffs. It explained that the warranty in section 4207, subdivision (a) runs to "the transferee and to any subsequent collecting bank" (*ibid.*), and the warranty in section 4208, subdivision (a) runs to "the drawee that pays or accepts the draft in good faith" (*ibid.*). U.S. Bank also pointed to a statement in the official comment to Uniform Commercial Code section 4-208, which expressly rejects the lead opinion in *Sun 'n Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671, 682 [148 Cal.Rptr. 329, 582 P.2d 920] (*Sun 'n Sand*), which held that a presentment warranty inured to the *drawer* of the check. "There is no warranty made to the drawer under subsection (a) when presentment is made to the drawee. . . . In [*Sun 'n Sand*] the court held that under [the former statute] a warranty was made to the drawer of a check when the check was presented to the drawee for payment. The result in that case is rejected." (2 West's U. Laws Ann. (2004) U. Com. Code, com. 2 to § 3-417, p. 275.)[14]

---

[12] The statute provides that "[a] drawee making payment may recover from a warrantor damages for breach of warranty equal to the amount paid by the drawee less the amount the drawee received or is entitled to receive from the drawer because of the payment. In addition, the drawee is entitled to compensation for expenses and loss of interest resulting from the breach. . . ." (§ 4208, subd. (b).)

[13] The statute defines " '[d]rawee' " as "a person ordered in a draft to make payment." (§ 4104, subd. (a)(8).)

[14] The official comment to Uniform Commercial Code section 4-208 states that the comment to Uniform Commercial Code section 3-417 applies to Uniform Commercial Code section 4-208. (2B pt. 1 West's U. Laws Ann. (2002) U. Com. Code, com. to § 4-208, p. 60 ["The substance of this section is discussed in the comment to Section 3-417."].) The difference between sections 4208 and 3417 is that section 4208 includes "items" (as defined in § 4104, subd. (a)(9)) within the term "draft," and thus covers promises to pay money handled by a bank for collection or payment that are *not* negotiable instruments. (§§ 3104, subd. (e), 4104, subd. (a)(7), (9).)

b. *Plaintiffs implicitly concede that sections 4207 and 4208 are not applicable, and rely instead on section 4205 as the basis for their breach of warranty cause of action*

Apparently crediting the authority cited by U.S. Bank, Plaintiffs implicitly concede that as drawers of the checks they cannot state a claim for breach of warranty under sections 4207 and 4208. Instead, on appeal (as in the trial court) Plaintiffs focus on a *different* statutory provision that is not expressly pled in the fifth amended complaint, namely section 4205. Plaintiffs argue that "[r]egardless of the title or label" of the ninth cause of action, "if the factual allegations in the [fifth amended] complaint state a valid cause of action on any available legal theory, [U.S. Bank's] [d]emurrer should be overruled."[15]

Section 4205 states in relevant part: "If a customer delivers an item to a depositary bank for collection . . . : [¶] . . . [¶] (b) The depositary bank warrants to collecting banks, the payor bank or other payor, and the drawer that the amount of the item was paid to the customer or deposited to the customer's account." Plaintiffs argue that under section 4205, U.S. Bank gave a warranty to them as "other payor[s]" that the checks were "paid to the customer or deposited to the customer's account." (§ 4205, subd. (b).) They further argue that U.S. Bank breached that warranty by depositing the funds into the bank account of Third Eye Systems Holdings, Inc., when that entity was not the payee on the checks.

However, because the warranty in section 4205, subdivision (b) is merely that the depositary bank paid the "customer" or made a deposit into the "customer's account," and it is undisputed that Third Eye Systems Holdings, Inc., was a *customer* of U.S. Bank, U.S. Bank would not have breached section 4205, subdivision (b) if that provision merely set forth a warranty that U.S. Bank paid its *customer* the funds that it collected. Thus, Plaintiffs advocate that we look beyond the plain language of the statute and read section 4205, subdivision (b) as creating a warranty that the depositary bank paid, or made a deposit in favor of, the *payee* of the check, not just a bank's *customer*. Under Plaintiffs' interpretation of the statute, U.S. Bank would have breached its warranty under section 4205, subdivision (b) because it did not pay or make a deposit in favor of the *payee* of the checks, which was Third Eye Systems, LLC. As we will explain, we reject Plaintiffs' interpretation of the statute for several reasons.

---

[15] Plaintiffs rely on the principle, which we have noted above, that "[i]f the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer." (*Quelimane, supra,* 19 Cal.4th at p. 38.)

■ First, we rely on the fact that the term "customer" is expressly defined in the statute as "a person having an account with a bank or for whom a bank has agreed to collect items, including a bank that maintains an account at another bank." (§ 4104, subd. (a)(5).) Thus, as defined in the statute, the term "customer" is not synonymous with the payee of a check. Employing the term "customer" as defined in section 4104, subdivision (a)(5), the meaning of section 4205, subdivision (b) is that a depositary bank necessarily warrants that it has made payment to or a deposit into the account of the person who has an account at the bank or who has asked the depositary bank to collect items on its behalf.

■ Second, we find it significant that checks are often endorsed by the payee and then transferred to a third party, who becomes the holder of the check, and that third party then may present the check to the depositary bank for deposit or payment.[16] In such an instance, when it presents the check to the payor bank, the depositary bank would not be able to warrant that it had made payment to, or a deposit in favor of, the *payee* of the check. However, the depositary bank *is* easily able to warrant that it has made payment to, or a deposit in favor of, its customer, the third party. Thus, the most reasonable reading of the statute comports with its plain language, namely that the depositary bank warrants that it is making payment to its customer, as defined in section 4104, subdivision (a)(5), not to the payee of the check.

Third, the official comment to Uniform Commercial Code section 4-205 is consistent with our reading of the statute. The official comment states that the statute "satisfies the need for a receipt of funds by the depositary bank by imposing on that bank a warranty that it paid the customer or deposited the item to the customer's account. This warranty runs not only to collecting banks and to the payor bank or nonbank drawee but also to the drawer, affording protection to these parties that the depositary bank received the item and applied it *to the benefit of the holder*."[17] (2B pt. 1 West's U. Laws Ann., *supra*, U. Com. Code, com. to § 4-205, p. 54, italics added.) Significantly, the official comment to Uniform Commercial Code section 4-205 states that the depositary bank warrants that the item has been applied to the benefit of

---

[16] "When a payee receives a check, the payee becomes its holder. The payee may negotiate the check by indorsing it and transferring it to another person, who then becomes its holder. In the normal course of events, a check is negotiated to a depositary bank, which then submits the check for collection through the check clearing system. If the check is indorsed in blank, it then becomes payable to bearer, and can be negotiated thereafter simply by delivery (just like cash)." (*In re McMullen, supra*, 251 B.R. at p. 567, fns. omitted.)

[17] The term "item" is defined as "an instrument or a promise or order to pay money handled by a bank for collection or payment." (§ 4104, subd. (a)(9).)

the *holder* of the item, not that the item has been applied to the benefit of the *payee* identified on that item.[18]

In support of their interpretation of the statute, Plaintiffs rely on case law developed under the former version of section 4205, which existed prior to the revision of the California Uniform Commercial Code in 1992.[19] Former section 4205 stated, in part, that "[a] depositary bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title . . . . " "[A] statement placed on the item by the depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement." (Former § 4205, subd. (1), added by Stats. 1963, ch. 819, § 1, pp. 1849, 1920 and repealed by Stats. 1992, ch. 914, § 22, p. 4385.) Plaintiffs point out that in applying former section 4205, *Lewis v. Telephone Employees Credit Union* (9th Cir. 1996) 87 F.3d 1537 stated that "[f]or a supplied indorsement to be effective under [former] § 4205[, subdivision ](1), the payee of the check and the customer in whose account the check is deposited must be one and the same." (*Id.* at p. 1555, citing *Mid-Atl. Tennis Cts. v. Citizens Bank & Trust Co.* (D.Md. 1987) 658 F.Supp. 140, 143 [holding that the bank was permitted under the statute to supply the indorsement only of its customer], *Kelly v. Central Bank and Trust Co.* (Colo.Ct.App. 1989) 794 P.2d 1037, 1041–1042 [bank was not authorized to supply the indorsement of a noncustomer], *Krump Const. Co. v. First Nat. Bank of Nevada* (Nev. 1982) 655 P.2d 524, 525 [holding that "[a]gency authority to supply missing endorsements accrues only when a party becomes a customer of the bank"].)

■ Plaintiffs argue that based on *Lewis* and the case law it cites, the term "customer" in the current version of section 4205, subdivision (b) should be read as referring to the "payee" of the check. We reject Plaintiffs' argument. *Lewis* and the cases it relies on stand for nothing more than the unremarkable proposition that a bank does not have the authority to supply an endorsement for a party other than its own customer. Thus, the authorities cited by Plaintiffs do not establish that the term "customer" in former section 4205 means "payee." Indeed, those authorities make a clear distinction between the

---

[18] The term "holder" has a specified meaning in the Uniform Commercial Code, distinct from a "payee." In the context of a negotiable instrument, the Uniform Commercial Code states that upon the "transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer," the transferee becomes the "holder" of the instrument. (2 West's U. Laws Ann., *supra*, U. Com. Code, § 3-201, subd. (a), p. 102.)

[19] The former version of section 4205 did not contain any provision similar to the current version of section 4205, subdivision (b). (See *In re Federal-Mogul Global, Inc.* (Bankr. D.Del. 2005) 319 B.R. 363, 369 [explaining that no provision comparable to § 4205, subd. (b) existed in the previous version of the Uniform Commercial Code].)

term "customer" and "payee" because they hold that a bank may only supply the endorsement of a payee *if* that payee is a customer. Further, we note that the interpretation of the term "customer" in *former* section 4205, subdivision (a) has little relevance to the proper interpretation of that term in the *current* version of section 4205, subdivision (b). The two provisions deal with distinct subjects. The current version of section 4205, subdivision (b) concerns depositary banks' warranties concerning payment or deposit of the amount received from the payor. Former section 4205, subdivision (a), in contrast, concerned the situations in which a depositary bank could supply an endorsement.

Having concluded that section 4205 does not describe a warranty on the part of a depositary bank that it paid, or made a deposit on behalf of, the *payee* of the check, we reject Plaintiffs attempt to oppose the demurrer to the ninth cause of action by relying on section 4205. Even liberally construing the ninth cause of action to allege that U.S. Bank violated the warranty set forth in section 4205, subdivision (b), Plaintiffs still would not state a cause of action.[20] Accordingly, the trial court properly sustained the demurrer to the ninth cause of action.[21]

### 3. *Eighth Cause of Action*

The eighth cause action is titled "Negligence under the Uniform Commercial Code." Plaintiffs allege that ". . . U.S. Bank breached their [*sic*] duty of care to Plaintiffs pursuant to the Uniform Commercial Code (e.g., §§ 4103[, subds. ](a), (e)) in the handling and depositing of Plaintiffs' checks. More specifically, Defendant U.S. Bank negligently breached that duty by

---

[20] Plaintiffs also argue that "[i]n addition to the warranties . . . pursuant to [section] 4205[, subdivision ](b)," Peter and Cameron Ministri and John Mills can state a cause of action against U.S. Bank for breach of warranty by relying on the endorsement on the back of the checks pertaining to those individuals. According to Plaintiffs, U.S. Bank supplied an endorsement on those checks stating "Credited to the Account of the Within Named Payee," through which it "expressly warranted" to the drawers of the checks that the funds were deposited to the account of Third Eye Systems, LLC. Plaintiffs have provided no authority lending support to their assertion that a claim for breach of express warranty is created (existing independently of the warranty described in § 4205), on behalf of a drawer of a check, when a depositary bank supplies an endorsement to a check. Instead, Plaintiffs' sole citation in their opening brief is to section 4205, subdivision (b), which, of course, does not lend support for the existence of a claim for breach of express warranty existing *independent* of its provisions. In their reply brief, Plaintiffs cite *Schmitz v. Firstar Bank Milwaukee* (2003) 262 Wis.2d 672 [664 N.W.2d 594, 596], in connection with their argument. *Schmitz* does not address a claim for breach of warranty. Accordingly, we reject Plaintiffs' argument because they have cited no supporting authority.

[21] In light of our rejection of the ninth cause of action on the ground that it does not state a claim, we need not reach the other ground for demurrer raised by U.S. Bank, namely that the ninth cause of action is barred by the statute of limitations.

failing to take commercially reasonable steps to ensure that all of the Plaintiffs' checks were endorsed by 'Third Eye Systems, LLC' and deposited in the bank account of 'Third Eye Systems, LLC.' "

As one of their two bases for demurrer to the eighth cause of action, U.S. Bank argued that under the facts pled in the complaint, the California Uniform Commercial Code does not give Plaintiffs a statutory cause of action for negligence against U.S. Bank. Plaintiffs argued that "[a]lthough [*Sun 'n Sand*] carved out a narrow exception for common law negligence, that exception is limited to common law negligence." As we will explain, under the facts of this case no provision in the California Uniform Commercial Code allows Plaintiffs to bring a statutory cause of action for negligence against U.S. Bank, and thus the trial court properly sustained the demurrer to the eighth cause of action.

As an initial matter, it is important to understand that the eighth cause of action concerns a *statutory* cause of action for negligence rather than a *common law* claim. Thus, we are not concerned with whether a *common law* cause of action is viable under the facts of this case.[22] We thus look to the California Uniform Commercial Code to determine whether it sets forth a cause of action for negligence by a drawer against a depositary bank in the specific situation presented here, namely, the depositary bank's deposit of checks with missing endorsements. (Cf. *National Union Fire Ins. Co. v. Allfirst Bank* (D.Md. 2003) 282 F.Supp.2d 339, 346 [concluding that although certain portions of the Uniform Commercial Code (as adopted by Maryland) created the "potential" for a statutory claim for negligence against a depositary bank, the plaintiff's claim for statutory negligence failed because it did not identify a portion of the Uniform Commercial Code that applied to the specific situation presented].)

■ In their eighth cause of action, Plaintiffs specifically identify section 4103, subdivisions (a) and (e) as the basis for their statutory negligence claim. However, those provisions do not establish that a depositary bank has a duty of care to a drawer that could form the basis for a negligence claim. Instead, the statute (1) establishes that the statutory provisions of the division of the California Uniform Commercial Code dealing with bank deposits and

---

[22] We note that several California cases have recognized that under a common law negligence theory, a drawer of a check is owed a duty of care by a collecting bank when the risk of harm is foreseeable. (See, e.g., *Sun 'n Sand, supra,* 21 Cal.3d at pp. 692–696; *E. F. Hutton & Co. v. City National Bank* (1983) 149 Cal.App.3d 60, 66–68 [196 Cal.Rptr. 614]; *Joffe v. United California Bank* (1983) 141 Cal.App.3d 541, 556 [190 Cal.Rptr. 443].) Indeed, in *Mills I* we followed those cases in ruling that Plaintiffs had pled a cause of action for common law negligence. (*Mills I, supra,* D041686.)

collections "may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure" (§ 4103, subd. (a)); and (2) describes "[t]he measure of damages for failure to exercise ordinary care in handling an item . . . ." (§ 4103, subd. (e).) Because they neither create a duty on the part of depositary banks to drawers nor authorize a cause of action for negligence in any specific situation, section 4103, subdivisions (a) and (e) cannot serve as the basis for a statutory negligence cause of action in this case.

In their briefing, Plaintiffs argue that they have a negligence cause of action against U.S. Bank pursuant to sections 3404, 3405, 3406 and 4202, subdivision (a)(1). However, as we will explain, none of those statutory provisions establishes that a drawer has a statutory cause of action for negligence against a depositary bank which deposits checks with missing endorsements.

■ We begin our discussion with section 3405. That provision governs "the rights and liabilities of persons paying or taking an instrument bearing a fraudulent indorsement made by an employee who has been given 'responsibility' by his or her employer for such instruments" and covers "both forged indorsements made in the name of the employer to instruments payable to the employer . . . and indorsements made in the name of payees of instruments issued by the employer." (*Lee Newman, M.D., Inc. v. Wells Fargo Bank* (2001) 87 Cal.App.4th 73, 82 [104 Cal.Rptr.2d 310], citation omitted.) Through its provisions, "[s]ection 3405 . . . adopts the fundamental principle that the risk of loss for fraudulent indorsements by employees entrusted with responsibility for checks should fall on the employer rather than the bank that takes the check or pays it." (*Id.* at p. 83.) "This loss allocation principle, however, is tempered by the doctrine of comparative negligence: Section 3405, subdivision (b) provides that, if the party paying the instrument or taking it for collection 'fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.' " (*Ibid.*) Thus, for cases falling within the scope of section 3405, that provision authorizes a statutory cause of action for negligence against a depositary bank. (*Lee Newman*, at p. 84.) The instant case, however, does not fall within the scope of section 3405, as it does not concern fraudulent endorsements made by an employee. Thus, Plaintiffs may not rely on section 3405 as a statutory basis for their claim that U.S. Bank is liable for negligently accepting checks with missing endorsements. (See 2 Clark &

Clark, The Law of Bank Deposits, Collections and Credit Cards (rev. ed. 2008) Check Fraud: Forged Instruments, ¶ 12.05[4][c], p. 12-121 [observing that neither U. Com. Code, § 3-405 nor § 3-406 covers the situation of missing endorsements, as opposed to forged endorsements].)

■ Plaintiffs next rely on section 3404. That provision applies in two situations, namely, (1) when an imposter induces the issuer of an instrument to issue the instrument to the imposter by impersonating the payee (*id.,* subd. (a)); and (2) when "a person whose intent determines to whom an instrument is payable . . . does not intend the person identified as payee to have any interest in the instrument, or [the] payee . . . is a fictitious person." (*Id.,* subd. (b).) Section 3404 also creates a statutory cause of action against a depositary bank by a drawer. It states that "[w]ith respect to an instrument to which subdivision (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." (§ 3404, subd. (d); see also *Gina Chin & Associates v. First Union Bank* (Va. 1998) 500 S.E.2d 516, 518 [ruling that the Virginia equivalent of § 3404 gave rise to a statutory negligence action by a drawer against a depositary bank in the situation where an employee forged checks].) The instant case does not fall within the scope of section 3404, subdivision (a) or (b) because it does not concern imposters or a check made out to a fictitious person or to a person whom the drawer did not intend to pay. Thus, Plaintiffs may not rely on section 3404 to support their cause of action for statutory negligence against U.S. Bank.

We next consider Plaintiffs' reliance on section 3406. That provision states in relevant part:

"(a) A person whose failure to exercise ordinary care contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

"(b) Under subdivision (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss." (§ 3406.)

■ Section 3406 does not apply here. The statute expressly concerns situations in which an instrument has been altered or a signature has been forged. The instant case does not concern either of those situations. Further, although we express no view on the matter, it is debatable whether in situations covered by the subject matter of section 3406, the statute gives rise to a cause of action for negligence by a drawer against a depositary bank. (See, e.g., *Halifax Corporation v. Wachovia Bank* (2004) 268 Va. 641 [604 S.E.2d 403, 405–409] [concluding that the Virginia equivalent of § 3406 did not give rise to a cause of action for negligence by a drawer against a depositary bank, but citing authorities reaching a contrary conclusion]; *White Sands Forest v. First National Bank* (Ct.App. 2002) 132 N.M. 453 [50 P.3d 202, 205] [concluding that the New Mexico equivalent of § 3406 did not give rise to a cause of action for negligence by a drawer against a depositary bank, but citing commentary to the contrary].)

Finally, Plaintiffs rely on section 4202, subdivision (a)(1). That provision states that "[a] collecting bank shall exercise ordinary care in . . . [¶] (1) Presenting an item or sending it for presentment." " 'Presentment' " is defined as "a demand made by or on behalf of a person entitled to enforce an instrument (1) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (2) to accept a draft made to the drawee." (§ 3501, subd. (a); see also § 4104, subd. (c) [adopting definition of " '[p]resentment' " appearing in § 3501].) In the instant case, Plaintiffs do not contend that U.S. Bank was negligent in how it handled the presentment of their checks to the payor banks. Instead, Plaintiffs complain about U.S. Bank's conduct in accepting their checks for deposit into the account of Third Eye Systems Holdings, Inc., when the checks were missing the proper endorsements. Thus, Plaintiffs may not rely on section 4202, subdivision (a)(1) as a basis for their statutory negligence cause of action.

In sum, Plaintiffs have identified no provision in the California Uniform Commercial Code that supports their statutory negligence claim against U.S. Bank. Accordingly, we conclude that the trial court properly sustained U.S. Bank's demurrer to the eighth cause of action.

### B. *The Motion to Compel Discovery*

We next consider Plaintiffs' challenge to the trial court's order denying their motion to compel discovery. We apply an abuse of discretion standard of review to the trial court's ruling denying a motion to compel discovery.

(*Saeta v. Superior Court* (2004) 117 Cal.App.4th 261, 266 [11 Cal.Rptr.3d 610].)

The trial court denied the discovery motion on both substantive and procedural grounds. As we will explain, we conclude that the procedural basis cited by the trial court was a sufficient basis for the exercise of its discretion to deny the motion to compel.[23]

As the procedural basis for its ruling, the trial court stated that Plaintiffs' separate statement had failed to comply with former rule 335 (which is now numbered rule 3.1020). Former rule 335 required that "[a]ny motion involving the content of a discovery request or the responses to such a request shall be accompanied by a separate statement," including, as at issue here, a motion to compel further responses to interrogatories and the production of documents. (Former rule 335(a).) Former rule 335 set forth in detail the requirements for the separate statement:

"(c) A separate statement is a separate document filed and served with the discovery motion that sets forth all the information necessary to understand each discovery request and all the responses to it that are at issue. The separate statement shall be full and complete so that no person is required to review any other document in order to determine the full request and the full response. Material shall not be incorporated into the separate statement by reference. The separate statement shall include—for each discovery request (e.g., each interrogatory, request for admission, deposition question, or inspection demand) to which a further response, answer, or production is requested—the following:

"(1) the text of the request, interrogatory, question, or inspection demand;

"(2) the text of each response, answer, or objection, and any further responses or answers;

"(3) a statement of the factual and legal reasons for compelling further responses, answers, or production as to each matter in dispute;

"(4) if necessary, the text of all definitions, instructions, and other matters required to understand each discovery request and the responses to it;

"(5) if the response to a particular discovery request is dependent on the response given to another discovery request, or if the reasons a further

---

[23] Accordingly, we need not, and do not, discuss the substantive ground cited by the trial court in support of its ruling.

response to a particular discovery request is deemed necessary are based on the response to some other discovery request, the other request and the response to it must be set forth; and

"(6) if the pleadings, other documents in the file, or other items of discovery are relevant to the motion, the party relying on them shall summarize each relevant document." (Former rule 335(c), now rule 3.1020(c).)

Plaintiffs filed a separate statement in support of their motion to compel, but it did not comply with the requirements of former rule 335 (now rule 3.1020). Plaintiffs' separate statement did not set forth U.S. Bank's full response to each of the interrogatories and requests for production at issue. Instead, the separate statement repeatedly grouped together several discovery requests, and then stated "in relevant part" U.S. Bank's response to the group as a whole, and it significantly truncated some of the lengthier responses. Further, although the separate statement contained a separate section in which Plaintiffs purported to set forth, as required, "a statement of the factual and legal reasons for compelling further responses, answers, or production as to each matter in dispute" (former rule 335(c)(3)), that section was extremely confusing because it did not indicate which of the specific discovery requests the various factual and legal reasons related to, and thus did not fulfill the requirement that the statement address the factual and legal reasons for compelling "each matter in dispute." (*Ibid.*)

In their appellate briefing, Plaintiffs acknowledge that they did not set forth the full response to each of the discovery requests. Plaintiffs argue, however, that they nevertheless fulfilled the requirement of former rule 335 because they attached to their separate statement U.S. Bank's actual responses to the discovery requests, and U.S. Bank's full responses could be found in those documents. However, former rule 335 forbids this practice, stating that "[t]he separate statement shall be full and complete so that no person is required to review any other document in order to determine the full request and the full response. Material shall not be incorporated into the separate statement by reference." (Former rule 335(c), now rule 3.1020(c).) In sum, Plaintiffs plainly did not comply with former rule 335.

We conclude that because Plaintiffs did not comply with the requirements of former rule 335, the trial court was well within its discretion to deny the motion to compel discovery on that basis. (Cf. *Neary v. Regents of University of California* (1986) 185 Cal.App.3d 1136, 1145 [230 Cal.Rptr. 281] [describing trial court's denial of motions to compel discovery because of a nonconforming separate statement].)

C. *Plaintiffs' Challenge to the Ruling Granting Summary Judgment in Favor of U.S. Bank on the Remaining Causes of Action for Common Law Negligence and Gross Negligence*

We next consider Plaintiffs' challenge to the trial court's ruling granting U.S. Bank's motion for summary judgment on the remaining causes of action in the fifth amended complaint, namely, the causes of action for common law negligence and gross negligence.

1. *Legal Standard Applicable to a Motion for Summary Judgment*

We begin our analysis with a review of the legal standards applicable to a motion for summary judgment.

Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment or summary adjudication is to be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant "moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) A defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense. (*Ibid.*) "[A]ll that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . [;] the defendant need not himself conclusively negate any such element . . . ." (*Id.* at p. 853, fn. omitted.) "A defendant moving for summary judgment may establish that an essential element of the plaintiff's cause of action is absent by reliance on the pleadings, competent declarations, binding judicial admissions contained in the allegations of the plaintiff's complaint, responses or failures to respond to discovery, and the testimony of witnesses at noticed depositions." (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1375 [88 Cal.Rptr.2d 802].) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar*, at p. 851.)

If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense. (*Aguilar, supra*, 25 Cal.4th at p. 849; *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].) " 'When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 647 [69 Cal.Rptr.2d 296].)

Ultimately, the moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra*, 25 Cal.4th at p. 850.)

We review a summary judgment or summary adjudication ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94].) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Lenane v. Continental Maritime of San Diego, Inc.* (1998) 61 Cal.App.4th 1073, 1079 [72 Cal.Rptr.2d 121].) "[W]e are not bound by the trial court's stated reasons for its ruling on the motion; we review only the trial court's ruling and not its rationale." (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1402 [120 Cal.Rptr.2d 392].)

### 2. *Collateral Estoppel*

U.S. Bank's first argument in favor of summary judgment is grounded in the concept of collateral estoppel. Relying on the federal court judgment, U.S. Bank argues that Plaintiffs are collaterally estopped under the doctrine of issue preclusion from litigating certain issues against U.S. Bank in this action.[24]

 One aspect of the res judicata doctrine is "[c]ollateral estoppel, or issue preclusion," which " 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297] (*Mycogen*).)[25] Collateral estoppel may be applied if the following threshold requirements are met: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom

---

[24] The existence of collateral estoppel is a legal question (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1333 [93 Cal.Rptr.2d 635]), and thus we do not have occasion to employ the burden-shifting analysis applicable in summary judgment rulings involving whether triable issues of fact exist.

[25] A second aspect of res judicata, commonly referred to as "claim preclusion" or simply "[r]es judicata," "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen, supra*, 28 Cal.4th at p. 896; see also *People v. Barragan* (2004) 32 Cal.4th 236, 252–253 [9 Cal.Rptr.3d 76, 83 P.3d 480] [contrasting issue preclusion and claim preclusion].) Claim preclusion is not at issue in this case.

preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223] (*Lucido*).) "The party asserting collateral estoppel bears the burden of establishing these requirements." (*Ibid.*)

■ An issue is " 'necessarily decided' " in a prior proceeding if the issue was not " 'entirely unnecessary' to the judgment" in the prior proceeding. (*Lucido, supra*, 51 Cal.3d at p. 342.) "An issue is actually litigated '[w]hen [it] is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined* . . . . A determination may be based on a *failure of . . . proof* . . . .' " (*People v. Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].) As Witkin explains, "Clearly, a former judgment is not a collateral estoppel on *issues which might have been raised but were not*; just as clearly, it is a collateral estoppel on issues which were raised, *even though some factual matters or legal arguments which could have been presented were not.*" (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 359, pp. 923–924; see also *Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181 [257 Cal.Rptr. 37] (*Interinsurance Exchange*) [quoting Witkin].)

U.S. Bank identifies two issues that it contends Plaintiffs are precluded from relitigating in this action. First, U.S. Bank argues that the "issue of who is liable for [Plaintiffs'] investment loss in Third Eye [Systems, LLC]" was established in the federal action. Second, U.S. Bank contends that the federal action encompassed the issue of whether U.S. Bank "caused the loss" to Plaintiffs by "depositing checks payable to Third Eye Systems, LLC into the account of Third Eye Systems Holdings, Inc." With respect to this second issue, U.S. Bank contends that the federal court "necessarily determined that [P]laintiffs *did* receive . . . ownership" of their investment units in Third Eye Systems, LLC, and thus "[P]laintiffs cannot now argue that they incurred damages as a result of [U.S. Bank's] alleged negligence or gross negligence in depositing their checks."

In this case, some of the requirements for collateral estoppel are undisputed. Specifically, the parties do not dispute that the decision in the federal action is now final and that there was a decision on the merits. The parties also do not dispute that Plaintiffs, who are the parties against whom issue preclusion is sought, were plaintiffs in the federal action. However, the parties do dispute the other three requirements for collateral estoppel, namely, whether the issues that U.S. Bank seeks to preclude are identical to issues decided in the federal action, and whether the issues were both actually litigated and necessarily decided in the federal action.

a. *The issue of who is liable for Plaintiffs' investment losses*

We first examine U.S. Bank's contention that the federal action determined the issue of "who is liable for [Plaintiffs'] investment loss in Third Eye [Systems, LLC]." As we will explain, we conclude that the issue of U.S. Bank's liability to Plaintiffs for their investment losses was not decided in the federal action, and thus Plaintiffs are not precluded by collateral estoppel from litigating that issue in this action.

We focus our analysis on the question of whether the identical issues were presented in both cases. "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (*Lucido, supra,* 51 Cal.3d at p. 342.) U.S. Bank describes the issue to be precluded as "who is liable for [Plaintiffs'] investment loss in Third Eye." However, that statement of the issue is not analytically precise. Described more precisely, the *ultimate* issue presented in the federal action was whether Third Eye Systems, LLC, Third Eye Systems Holdings, Inc., Miller and Hovde were liable to Plaintiffs. The factual issues actually litigated, as shown by Judge Sabraw's findings of fact and conclusions of law, were (1) whether the securities that the federal plaintiffs paid for were exempt from the registration requirements of the Washington securities laws because they fell under the private offering exemption and (2) whether John Mills was sufficiently involved as a promoter of the securities that he was barred from obtaining rescission under the doctrine of in pari delicto. Judge Sabraw's findings on those factual issues are not dispositive of the negligence claims in this case.

In sum, the federal action simply did not encompass the issue of whether U.S. Bank was liable to Plaintiffs for their investment losses. The issues in the two actions are accordingly not identical as required to create collateral estoppel.[26]

b. *The issue of whether Plaintiffs were injured as a result*
*of U.S. Bank's alleged negligence or gross negligence*

We next examine U.S. Bank's contention that by virtue of the facts established in the federal action, Plaintiffs are unable to show that they sustained any injury due to U.S. Bank's alleged negligence and gross negligence.

---

[26] U.S. Bank relies on *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 811 [122 P.2d 892]; *Interinsurance Exchange, supra,* 209 Cal.App.3d 177, 181; and *Campbell v. Scripps Bank, supra,* 78 Cal.App.4th 1328, 1334. None of those cases is applicable here because they all concerned situations in which the issue necessarily decided in the first action was identical to the issue presented in the second action.

As we have explained, U.S. Bank contends that in ordering rescission, Judge Sabraw "necessarily determined that [P]laintiffs *did* receive . . . ownership" of their investment units in Third Eye Systems, LLC, and thus "[P]laintiffs cannot now argue that they incurred damages as a result of [U.S. Bank's] alleged negligence or gross negligence in depositing their checks." Put simply, U.S. Bank takes the position that due to Judge Sabraw's purported determination of the ownership issue, Plaintiffs are not able to argue in this action that they were injured when, due to U.S. Bank's alleged negligence, they were prevented from taking ownership of investment units in Third Eye Systems, LLC.

Without even determining whether there is merit to U.S. Bank's contention that Judge Sabraw's decision gave rise to collateral estoppel on the issue of whether Plaintiffs became owners of the investment units, we reject U.S. Bank's argument because it contains a flawed assumption concerning Plaintiffs' position as to how their injuries arose. Contrary to U.S. Bank's assumption, Plaintiffs' theory as to how their injuries arose does not depend on an allegation that they failed to receive ownership of the investment units due to U.S. Bank's crediting the checks to Third Eye Systems Holdings, Inc.

Instead, Plaintiffs contend that they sustained injury because, among other things, the value of Third Eye Systems, LLC, was less than it would have been had Third Eye Systems, LLC, been capitalized with Plaintiffs' funds, rather than losing that capital when Plaintiffs' checks were deposited into the account of Third Eye Systems Holdings, Inc. Indeed, Plaintiffs claim that their investment units were worth "at least 75% less" because Third Eye Systems, LLC, never received the funds from Plaintiffs. Further, Plaintiffs explain that because their funds were placed into the account of Third Eye Systems Holdings, Inc., that entity (instead of Third Eye Systems, LLC) purchased a public company using Plaintiffs' funds. Because Third Eye Systems, LLC, did not purchase the public company, it "lost one of its major anticipated assets," and Plaintiffs, as investors in Third Eye Systems, LLC, lost "a significant asset to sell to recoup some of their losses."

Accordingly, even if U.S. Bank was able to establish, through the decision in the federal action, that Plaintiffs had become owners of Third Eye Systems, LLC, investment units, Plaintiff's ability to show that they were injured would not be undermined. U.S. Bank thus has not established that the federal judgment provides a basis for entry of judgment in this action on collateral estoppel grounds.

### 3. *Causation*

As a further ground for summary judgment, U.S. Bank argued that Plaintiffs cannot establish that U.S. Bank's alleged negligence was the cause of Plaintiffs' investment loss. We agree.

U.S. Bank argued (1) it is undisputed that Miller and Hovde, as managing partners and general managers of Third Eye Systems, LLC, had the authority to supply endorsements enabling checks payable to Third Eye Systems, LLC, to be deposited into Third Eye Systems Holdings, Inc., and thus (2) Plaintiffs checks would have ended up in the account of Third Eye Systems Holdings, Inc., in any event, regardless of U.S. Bank's actions. U.S. Bank argued that "if . . . Hovde and . . . Miller had the absolute power and right to move around the money of the two Third Eye entities however they chose, U.S. Bank's alleged action of depositing [P]laintiffs' checks into accounts of Third Eye Systems Holdings, Inc. was not the cause of [P]laintiffs' investment loss." Thus, according to U.S. Bank, although Plaintiffs state that their damages "were caused by [U.S. Bank's] negligent acceptance of Plaintiffs' checks for deposit into [Third Eye Systems Holdings, Inc.'s] account," U.S. Bank would not be the legal cause of those damages.

We begin our analysis with the applicable legal principles. To prevail on their causes of action for negligence and gross negligence, Plaintiffs would have to establish that U.S. Bank's negligence was a substantial factor in causing their injury. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968–969 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) Except in situations involving concurrent independent causes,[27] which no one contends is the case here, " 'the actor's negligent conduct is *not a substantial factor* in bringing about harm to another *if the harm would have been sustained even if the actor had not been negligent.*' " (*Viner, supra,* 30 Cal.4th at p. 1240, quoting Rest.2d Torts, § 432.) Applying this principle, U.S. Bank contends that the harm to Plaintiffs would have occurred even if U.S. Bank had not been negligent in accepting the checks into the account of Third Eye Systems Holdings, Inc., without the necessary endorsement by Third Eye Systems, LLC, because Miller and Hovde would have supplied the necessary endorsement if U.S. Bank had refused to deposit the checks.

In support of its motion for summary judgment, U.S. Bank submitted declarations from Miller and Hovde. Both Miller and Hovde stated that they held the positions of founder, principal, managing partner and general manager of Third Eye Systems Holdings, Inc., and Third Eye Systems,

---

[27] Concurrent independent causes "are multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1240 [135 Cal.Rptr.2d 629, 70 P.3d 1046] (*Viner*).)

LLC.[28] Miller stated that she treated the two companies "as the same entity," and Hovde stated that he treated the bank accounts of the two companies as "interchangeable." Both Miller and Hovde stated that they "had complete authority to take title to checks made payable to [Third Eye Systems, LLC]" and to "deposit those checks in whatever account [they] elected." Specifically, with regard to Plaintiffs' checks, Hovde and Miller stated that they directed each of the checks into the account of Third Eye Systems Holdings, Inc., at U.S. Bank, and U.S. Bank followed their directions. Further, they both stated that they "would have corrected any irregularities in the endorsements if U.S. Bank had refused to deposit the checks."[29]

Based on these facts, U.S. Bank argued in its motion for summary judgment that U.S. Bank was not a substantial cause of any injury stemming from the fact that Plaintiffs' checks were deposited into the bank account of Third Eye Systems Holdings, Inc., because if U.S. Bank had refused to deposit the checks into the account of Third Eye Systems Holdings, Inc., Miller and Hovde would have simply endorsed the checks on behalf of Third Eye Systems, LLC, and thereby transferred title of the checks to Third Eye Systems, LLC. In short, U.S. Bank argued that even without any improper conduct by U.S. Bank, Plaintiffs' checks still would have ended up in the account of Third Eye Systems Holdings, Inc., and thus " 'the harm would

---

[28] Plaintiffs disputed this statement on the ground that as a corporation Third Eye Systems Holdings, Inc., would not have any managing partners. The undisputed evidence in the record does show, however, that Miller and Hovde were the sole owners of Third Eye Systems Holdings, Inc.

[29] Miller's and Hovde's statements about what they *would have done* if U.S. Bank required proper endorsements are statements that describe Miller's and Hovde's states of mind. Under Code of Civil Procedure section 437c, subdivision (e), the trial court had discretion to either accept or reject evidence in support of the motion for summary judgment that described Miller's and Hovde's states of mind. (See *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 636 [68 Cal.Rptr.3d 732].) In *Trujillo*, the court ruled that the trial court did not abuse its discretion in granting summary judgment under a causation analysis based on the declarants' statement about what they *would have done* even if the defendant had not acted improperly, even though the supporting declarations were self-serving and described the declarants' states of mind. (*Id.* at p. 639.) Here, Plaintiffs have not specifically argued that the trial court abused its discretion in accepting Miller's and Hovde's statements regarding their states of mind as a basis for granting summary judgment, and we find no basis in the record to conclude that the trial court abused its discretion in that regard.

Plaintiffs argue that it is "pure speculation" that Miller and Hovde would have transferred the funds received from Plaintiffs into the bank account of Third Eye Systems Holdings, Inc., *if* they knew that "such transfers would be reflected in [Third Eye Systems, LLC's] books and records." This argument fails because it assumes that the only way that Miller and Hovde could have transferred the funds to Third Eye Systems Holdings, Inc., would be to first deposit the funds into the account of Third Eye Systems, LLC, and to then carry out the transfer. However, as we have discussed, the transfer of the funds could have been accomplished merely by having Miller and Hovde supply endorsements on the checks from Third Eye Systems, LLC.

have been sustained even if [U.S. Bank] had not been negligent.' " (*Viner, supra*, 30 Cal.4th at p. 1240, italics omitted.)

U.S. Bank relies on *In re McMullen, supra*, 251 BR. 558, which employed a similar causation analysis. The facts in *In re McMullen* are analogous to this case. The depositary bank accepted checks for deposit to the account of McMullen Oil Co. Pension Plan, even though the payee of the checks was McMullen Oil Co., a different entity. (*Id.* at p. 566.) The checks were not endorsed by McMullen Oil Co., and instead were stamped with the endorsement of the McMullen Oil Co. Pension Plan. (*Ibid.*) After McMullen Oil Co. went into bankruptcy, its creditors' trust alleged that the depositary bank was negligent in accepting the checks for deposit into the account of McMullen Oil Co. Pension Plan. (*Id.* at p. 571.) On summary judgment, the undisputed evidence was that the president of McMullen Oil Co. was authorized (prior to bankruptcy) to receive, endorse and deposit checks made payable to McMullen Oil Co., and that he was the person who caused the checks to be deposited into the account of McMullen Oil Co. Pension Plan. (*Id.* at p. 566.) The court concluded that the element of causation could not be established for the checks deposited before the bankruptcy because "if the bank had refused the deposits on the grounds of the missing indorsements, the court infers from the evidence presented that [the president of McMullen Oil Co.] would have provided the missing indorsements." (*Id.* at p. 573.)[30]

We find *McMullen*'s analysis to be persuasive and to be applicable here. The fact that Miller and Hovde had the authority to endorse the checks on behalf of Third Eye Systems, LLC, and maintain that they would have done so, means that Plaintiffs' checks would have been deposited in the account of Third Eye Systems Holdings, Inc., even in the absence of any negligence by U.S. Bank. Thus, the element of causation cannot be established.

In an attempt to dispute that Miller and Hovde had the authority to endorse checks on behalf of Third Eye Systems, LLC, and thereby transfer them to Third Eye Systems Holdings, Inc., Plaintiffs submitted their own declarations, each stating that their checks "were not made payable to either . . . Miller or . . . Hovde," and that "[t]herefore, [they] understood that [Miller and Hovde] did not have any authority to take title to . . . checks payable to

---

[30] U.S. Bank also relies on *Campbell v. Bank of America* (1987) 190 Cal.App.3d 1420, 1428 [235 Cal.Rptr. 906]. In *Campbell*, the drawer of checks sued the payor bank that made payment to MVTL-North on checks made out to MVTL, when MVTL had not endorsed the checks. (*Id.* at pp. 1423–1424.) Because the chief executive officer and manager of both entities was the same and he had authority to cause checks made out to MVTL to be paid to MVTL-North, *Campbell* rejected the claim that the bank had been negligent in making payment on the checks. (*Id.* at p. 1428.) We do not find *Campbell* to be particularly relevant in this case because it does not expressly undertake a causation analysis in its brief discussion of the viability of the negligence cause of action. (*Ibid.*)

'Third Eye Systems, LLC.' " Plaintiffs' declarations further stated that they "never authorized . . . Miller, . . . Hovde, or anyone else to deposit [their] checks into a bank account of [Third Eye Systems Holdings, Inc.]"[31]

However, as we have explained, the dispositive facts are that Miller and Hovde had the authority to endorse checks *on behalf of Third Eye Systems, LLC,* and that they would have supplied an endorsement from that entity if U.S. Bank had required them to do so. The evidence submitted by Plaintiffs does not serve to create a triable issue of fact on that subject. Plaintiffs' evidence addresses only whether the checks were payable to Miller and Hovde and whether Plaintiffs authorized their checks to be deposited into the bank account of Third Eye Systems Holdings, Inc. Plaintiffs' evidence simply does not call into question the dispositive facts that Miller and Hovde had the ability to endorse checks on behalf of Third Eye Systems, LLC, in their capacity as managing partners and general managers of that entity, and that they would have corrected the endorsement if U.S. Bank had insisted that they do so.[32]

We accordingly conclude that because U.S. Bank established that Plaintiffs could not prevail on the necessary element of causation, summary judgment was properly granted on the causes of action for negligence and gross negligence.[33]

---

[31] Plaintiffs also submitted a letter written to the board of directors of Third Eye Systems Holdings, Inc., in June 2000, by Alan Painter. The record does not fully explain Painter's role, but according to his letter, he was apparently an investor in Third Eye Systems, LLC. The letter states that it had come to Painter's attention that Third Eye Systems, LLC, had been depositing investors' checks payable to Third Eye Systems, LLC, "into other Company's accounts," and that "[t]o [his] knowledge, this was done without any authorization, documentation or notification from the payor or recipient corporation." The letter standing alone, without admissible testimony from Painter about the basis for his knowledge as to Miller and Hovde's authority, is not sufficient to create a triable issue as to whether Miller and Hovde had the authority to endorse checks on behalf of Third Eye Systems, LLC.

[32] Plaintiffs cite *Oswald Machine & Equipment, Inc. v. Yip* (1992) 10 Cal.App.4th 1238, 1247 [13 Cal.Rptr.2d 193], in their reply brief in connection with their argument that Miller and Hovde were not authorized to deposit Plaintiffs' checks in the account of Third Eye Systems Holdings, Inc. *Oswald* is not applicable. In *Oswald* the question was whether an employee had the authority to deposit his employer's checks into other bank accounts. Based on specific testimony by the president of the employer about the limited scope of the employee's authority, the court concluded that a triable issue of fact existed on the question of the employee's authority. (*Ibid.*) Here, in contrast, Plaintiffs presented no evidence that creates a material issue of fact as to whether Miller and Hovde were authorized to endorse checks on behalf of Third Eye Systems, LLC, and transfer them to Third Eye Systems Holdings, Inc.

[33] We need not, and do not, address the third issue raised by U.S. Bank as a basis for summary judgment, namely, that under the specific facts of this case, as developed through the evidence presented in support of the motion, U.S. Bank had no duty of care to Plaintiffs because this case is sufficiently dissimilar to the facts of *Sun 'n Sand, supra,* 21 Cal.3d 671, and the cases applying its holding.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

McConnell, P. J., and O'Rourke, J., concurred.

A petition for a rehearing was denied October 3, 2008, and appellants' petition for review by the Supreme Court was denied December 10, 2008, S167555.