415 P.2d 213

Wayne T. BLOMQUIST, and Granite Credit, Plaintiffs and Appellants,

v.

ZIONS FIRST NATIONAL BANK, N. A., a corporation, Defendant and Third-Party Plaintiff and Respondent,

v.

The CONTINENTAL BANK & TRUST COMPANY, a corporation, Third-Party Defendant and Second Third-Party Plaintiff and Respondent,

v.

SHARP CARS, INC., Second Third-Party Defendant and Respondent.

No. 10489.

Supreme Court of Utah.

June 3, 1966.

Ronald C. Barker, Salt Lake City, for appellants.

John W. Horsley, Salt Lake City, for Zions First Nat. Bank.

Ralph L. Jerman, Salt Lake City, for Continental Bank.

Nathan J. Fullmer, Salt Lake City, for Sharp Cars, Inc.

CROCKETT, Justice:

Plaintiff Wayne T. Blomquist (Granite Credit) as drawer, sued Zions First Nation-

al Bank as drawee, for $2,384.50, the amount of two checks which Zions had paid and charged to plaintiff's account. The basis of plaintiff's claim is that one of the endorsements of the three payees named on each of the checks was forged.

Zions impleaded the collecting bank, Continental Bank & Trust Company; and Continental impleaded Sharp Cars, Inc., a used car dealer, its depositor, who was an endorser of both of the checks. Upon pretrial proceedings, the court granted summary judgment in favor of Zions First National Bank. Plaintiff appeals from that judgment and we are here concerned only with the issue as to that defendant.

Just prior to September 19, 1963, Sharp Cars, Inc. was negotiating a sale of a 1960 Pontiac car to James D. Parker and plaintiff agreed to finance the transaction. On September 19, plaintiff made out a check for a loan of $600 which was to be the down payment; two days later on September 21, the parties agreed that plaintiff would advance an additional $1,784.50 to pay Sharp in full for the car so the title could be obtained and pledged to plaintiff as security for the loan. The two checks mentioned, one for $600 and one for $1,-784.50, were made payable to Sharp Cars, James D. Parker and his wife, Pat, as joint payees. A chattel mortgage and note were prepared, listing as security the car mentioned and also furniture of the Parkers. The documents were given to James Parker

and Bruce Anderson, salesman for Sharp Cars, for the purpose of having them signed. Mr. Anderson returned to the plaintiff the signed note and mortgage and the certificate of title. Wayne Blomquist then notarized the signatures on the mortgage without seeing or talking to a Pat Parker, who it seems turned out to be a supposed but nonexistent wife of James D. Parker.

On the following day, Sharp Cars deposited the checks in its account with Continental Bank for collection. Under regular banking procedures, upon presentation to it, Zions paid the checks and the account of Sharp Cars in Continental Bank was duly credited.

About a week or 10 days thereafter, plaintiff had discovered that there was no such person as Pat Parker and promptly notified Sharp Cars. When James Parker returned there for his license plates Sharp took possession of the car and delivered it to plaintiff as the lien holder. As plaintiff had feared when it learned of the falsification concerning Pat Parker nothing more was heard of the car purchaser, James D. Parker.

Nearly two months later, in the latter part of November, plaintiff notified Zions Bank that one of the endorsements on the checks, that of Pat Parker, was forged and demanded that its account be recredited for the amount of the two checks. It is noteworthy that plaintiff refused the bank's request to answer as to what had happened,

or to fill out an affidavit of forgery. Zions refused to recredit plaintiff's account. Plaintiff withdrew its remaining funds therein and brought this action.

Plaintiff places reliance on Sec. 44-1-24, U.C.A.1953,[1] which states:

> *Where a signature is forged,* * * * it is wholly inoperative, and *no right* * * * *can be acquired through or under such signature,* unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority. (Emphasis added.)

■ The validity and effectiveness of this section under usual circumstances, to prohibit collection where an endorsement on a check has been forged, is not questioned.[2] But its application should be limited to those circumstances in which it was intended to apply. The plaintiff has failed to take this into account in arguing for what impresses us as a superficial and too literal application of this statute. In so saying we do not desire to be understood as suggesting that the terms of the statute may be ignored or distorted. But they must be looked at carefully in cognizance of the full meaning underlying both the terms used and the purpose sought to be accomplished.

■■ The reference to the forgery of a signature in the statute imports something more than subscribing a name different from one's own. The writing of another's name may be completely harmless. It does not necessarily constitute invasion of a right. Nor does the signing of another's name, even on a legal document, necessarily make out a cause of action. To establish a right of recovery based on a forgery, it must have had the effect of adversely affecting one's rights,[3] or of cheating him out of something of value.[4] The general rule is firmly established that a drawee bank has no right to debit its depositor's account except upon his order and genuine endorsements. But like all rules it is subject to exceptions. A well-recognized one is that the depositor has no basis for complaint if what is done with the check carries out his purpose in that the proceeds reach the person for whom they were intended.[5] This

1.  This is the same as § 23 of Negotiable Instrument Law, the whole of which was codified in Title 44, Chapters 1–4, U.C.A. 1953, and repealed when the Uniform Commercial Code became effective January 1, 1966. See Title 70A, U.C.A. 1953.
2.  Simpson v. Denver & Rio Grande R.R. Co., 43 Utah 105, 134 P. 883, 46 L.R.A., N.S., 1164; American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034.
3.  See definitions 37 C.J.S. Forgery § 1, pp. 31–32; 23 Am.Jur. p. 676 and authorities referred to therein.
4.  Boise Dev. Co., Ltd. v. Boise City, 30 Idaho 675, 167 P. 1032 (1917); 1 C.J.S. Actions § 15, p. 1011.
5.  For cases closely analogous on the facts, see Commercial Credit Corp. v. Empire Trust Co., (8th Cir. 1958), 260 F.2d 132; authorities therein cited; and in 39 A.L.R. 2d 641, 649; Michie Banks & Banking, Vol. 5B, § 277a.

comports with reason and justice because in such instance the depositor has suffered no damage.

In the situation we find here plaintiff is unable to fulfill the requirement just discussed above. There is no indication in this record as to who placed the name of Pat Parker on the checks. But that does not appear to be important here. Whether she or someone else placed that name thereon would have had no effect upon where this money went. The significant fact is that neither of the Parkers nor the plaintiff were to receive any of the proceeds of these checks. The transaction worked out as the parties intended, and as it would have worked out, whether a "Pat Parker" or someone else signed that name on the checks. The money went to Sharp Cars, where it was supposed to go; it paid for the car in order to get the title to be given to the plaintiff as security, all of which was done as intended. And when the purchaser defaulted, plaintiff got the car, and now has recourse against the purchaser, just as the transaction was projected.

Inasmuch as the payee, Sharp Cars, who was intended to receive the proceeds of the checks, endorsed them and received the money, the plaintiff as drawer has suffered no damage nor had his rights adversely affected. Consistent with the discussion herein and the authorities noted, under such circumstances he would have no right of recovery against the drawee bank because of irregularity of endorsement by forgery or the use of a fictitious name of a person who had no interest in the transaction but was incidentally shown as a payee. Accordingly, we are in agreement with the ruling of the trial court dismissing plaintiff's complaint against the drawee, Zions First National Bank.

The above disposition of the issue presented renders it unnecessary to consider plaintiff's further complaints against Zions for actual and punitive damages for dishonoring subsequent checks. The bank ordinarily owes no duty to its depositors, who do not have sufficient funds to cover their checks, to pay, or to inquire concerning the payment, of checks before dishonoring them. There may, of course, be situations where the bank has expressly or impliedly agreed to do so, but no such circumstance is evident here.

Affirmed. Costs to defendant Zions First National Bank (respondent).

HENRIOD, C. J., and McDONOUGH, WADE and CALLISTER, JJ., concur.