MAURICE GORDON *vs.* STATE STREET BANK AND TRUST COMPANY & others.

Suffolk.   January 11, 1972. — February 25, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, & HENNESSEY, JJ.

*Bills and Notes*, Forgery, Drawer.

In an action against a bank for the amount of a check drawn by the plaintiff on the defendant payable to husband and wife and paid by it after the wife's indorsement had been forged, the plaintiff could not recover where he intended only the husband to receive the proceeds of the check, as he did, and the plaintiff was not harmed; if § 3-405 (1) (b) of the Uniform Commercial Code was applicable the forged signature was effective because she was intended "to have no interest in the instrument." [260-262]

CONTRACT. Writ in the Municipal Court of the City of Boston dated March 26, 1970.

The action was heard by *Canavan, J.,* who found for the defendant.

*Leslie H. Rudnick (Jordan L. Ring* with him) for the plaintiff.

*Paul R. Devin (Harvey Weiner* with him) for the State Street Bank and Trust Company.

CUTTER, J. Gordon seeks to recover from the defendant (State Street) the amount of a check drawn by him on State Street and paid by it on a forged indorsement.

A judge of the Municipal Court of the City of Boston found for State Street, which had impleaded as third party defendant First Bank and Trust Company of Hampden County (the Hampden bank), which in turn had impleaded Norma Wolf, one of the payees of the check both individually and as administratrix of the estate of her late husband, Philip Wolf, the other payee. Gordon appeals from an order of the Appellate Division dismissing a report of the trial judge. The report shows the following pertinent evidence.

On May 14, 1969, Philip Wolf, a resident of Springfield, while in Boston, asked Gordon to lend him $5,000. Wolf was an employee of a window company from which Gordon in the past had bought windows through Wolf. Gordon did not ask Wolf why he wanted to borrow money or about his financial status. Gordon testified that "he . . . intended that the money was to be for only Philip Wolf."

Gordon prepared a note for Philip Wolf and his wife, Norma, to sign. He gave the note to Philip and told him that, upon obtaining the note bearing witnessed signatures, he (Gordon) would issue a check. It was Gordon's "policy . . . [to obtain a borrower's wife's signature] in making loans" and he testified that he would not have lent the money to Philip without Norma's signature. That same day, Philip brought the note (in form at least witnessed by one Len Cohn) back to Gordon with a signature purporting to be that of Norma Wolf together with his own.

Thereupon, Gordon issued a check dated May 14, 1969, drawn on State Street for $5,000 payable to the order of Philip Wolf and Norma Wolf. At some time on May 14, 1969, the check was certified. On May 15, at 9:57 A.M. the check was presented by Philip to the Hampden bank for payment. Philip received $1,300 in cash and deposited $3,700 to a joint account of Philip and Norma at the Hampden bank. On May 16, State Street received the check and charged Gordon's account in the amount of $5,000.

In mid-June, 1969, Gordon learned that Philip Wolf had died on May 24, 1969. Gordon communicated with Norma Wolf and "discovered that . . . [she] had no knowledge of the loan nor of her [purported] signature on the note and check" and that she had never "author-ize[d] . . . Philip to sign her name to any notes or checks nor was she aware that . . . [he] was borrowing" from Gordon. About June 10, 1969, Gordon reported the alleged forgery to State Street.

Gordon requested the judge to rule (1) that a finding for him was warranted as matter of law, and (2) that such a finding for him was required. The judge, as to request no. 1, referred to his finding mentioned below, and ruled that the evidence "[w]arrants but does not compel" a finding for Gordon. He denied request no. 2. He found that the proceeds of the check went to the very person intended by the drawer, Gordon. The Appellate Division ruled as follows: (1) Gordon, by his negligence in accepting a note signed by Philip and by one not seen by Gordon (represented by Philip to have been his wife), "contributed to the promotion of the fraud" by Philip Wolf, and that as between State Street and Gordon, the loss should be borne by Gordon. (2) Although generally a drawee bank may make charges against a "depositor's account only on his authentic order and on genuine endorsements the rule is usually relaxed, if it is established that the proceeds of the check reached the person for whom they were intended."

1. On the evidence the judge was warranted in finding that Gordon intended Philip Wolf alone to receive the proceeds of the check and that he did receive them. The drawer is not harmed if the drawee bank's action with respect to a check carries out (or does not interfere with the accomplishment of) the drawer's purpose with respect to that check.

Ordinarily an instrument "is converted when . . . it is paid on a forged indorsement." See G. L. c. 106, § 3-419 (inserted by St. 1957, c. 765, § 1). See also § 3-404. Norma Wolf's indorsement could be treated as forged (if, as she claims, she never signed it), unless the general

rule of §3–419 is affected by § 3–405, which reads in part: "(1) An indorsement by any person in the name of a named payee is effective if (a) an imposter by use of the mails or otherwise has induced the . . . drawer to issue the instrument to him or his confederate in the name of the payee; or (b) a person signing as or on behalf of a . . . drawer intends the payee to have no interest in the instrument . . . ." Subsection 1 (a) does not seem apposite but the language of subsec. 1 (b) may be applicable to the present situation. Although so to apply subsec. 1 (b) goes somewhat beyond the examples stated in comment 3 (see Uniform Commercial Code, 1962 Official Text pp. 291–294) to § 3–405, one of the underlying purposes (of placing the risk of loss from a wrongful indorsement on the drawer where his intended payee received the funds) is as applicable to this situation as it is to those stated in the examples.

The result reached by the Appellate Division is consistent with the weight of authority. The drawer is not damaged by the application of the rule, for no person not intended by him to take an interest has done so as a consequence of the forged indorsement, and (at least in the circumstances of the present case) there has been precisely the expected benefit, as a consequence of the initial negotiation of the check, to the person intended to take the whole interest.[1] See 2 Anderson, Uniform Commercial Code (2d ed.) 928–937; Michie, Banks & Banking (and 1971 Supp.), § 277c, pp. 83–86. For cases under (or referring to) the Uniform Commercial Code (not, however, wholly resting on § 3–405), see *Gotham-Vladimir Advertising Inc.* v. *First Natl. City Bank*, 27 App. Div. 2d (N. Y.) 190, 192–193; *Girard Trust Corn Exch. Bank* v. *Fidelity-Philadelphia Trust Co.* 31 D. & C. 2d (Pa.) 575, 577–579 (no express reference to § 3–405). See also *Arlington Trust Co.* v. *Montgomery Banking & Trust Co.* 278 F. Supp. 106, 110–111 (E. D. Va.); *First Pa.*

---

[1] Any unexpected damage to Gordon comes from his acceptance of a note on which Norma Wolf's signature was forged, rather than from the transfer of the funds, represented by the check, to Philip Wolf who was intended to receive them.

*Banking & Trust Co.* v. *Montgomery County Bank & Trust Co.* 29 D. & C. 2d (Pa.) 596, 601–602 (in an action by the drawee against a collecting bank on its warranty, describing § 3–405 as intended "to promote negotiability") ; *Thompson Maple Prod. Inc.* v. *Citizens Natl. Bank,* 211 Pa. Super. 42, 46–48 (relying on § 3–406). Cf. *Gast* v. *American Cas. Co.* 99 N. J. Super. 538, 543–546. For cases under the law prior to the Uniform Commercial Code, or not referring to the Code, reaching essentially the same result, see *Commercial Credit Corp.* v. *Empire Trust Co.* 260 F. 2d 132, 133–135 (8th Cir.) ; *Florida Natl. Bank* v. *Geer,* 96 So. 2d 409, 412 (Fla.) ; *Coplin* v. *Maryland Trust Co.* 222 Md. 119, 122–125; *Blomquist* v. *Zions First Natl. Bank,* 18 Utah 2d 65, 68–69.

If § 3–405 is applicable to this situation, the forged indorsement of Norma Wolf was effective for she was intended "to have no [ultimate] interest in the" proceeds of the check. If it be considered that Gordon's expectation of her indorsement gave her some minimal "interest in the instrument," then the case may not be covered by the Uniform Commercial Code at all. If this view is adopted, the result of the case will be the same, for it will be governed by the principles stated in the pre-Code cases already cited. See G. L. c. 106, § 1–103.[2] On either of these theories the result reached by the Appellate Division must be upheld.

2. In view of our decision in part 1 of this opinion, we need not discuss whether Gordon is precluded from recovery by G. L. c. 106, § 3–406.[3]

*Order dismissing report affirmed.*

---

[2] Section 1–103 reads: "Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant . . . shall supplement its provisions." See *French Lumber Co. Inc.* v. *Commercial Realty & Fin. Co. Inc.* 346 Mass. 716, 719–720; *National Shawmut Bank* v. *Vera,* 352 Mass. 11, 16.

[3] Section 3–406 reads: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."