AMERICAN NATIONAL BANK IN ST. LOUIS, Appellant,

v.

Maurice E. SEIDEL, Jerome J. Seidel and First National Bank in St. Louis, Respondent.

No. 42612.

Missouri Court of Appeals, Eastern District, Division 1.

Aug. 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Bernard Susman, St. Louis, for appellant.

John J. Cole, St. Louis, Barbara L. Beran, Clayton, for respondent.

CRIST, Judge.

Appellant (hereinafter "issuing bank") issued two cashier's checks for $15,000.00 each, payable to Maurice E. Seidel (hereinafter "husband"), Frances C. Seidel (hereinafter "wife") and Jerome J. Seidel (hereinafter "Jerome"). These checks were for loans made by issuing bank. After wife's endorsement was forged on the checks, they were deposited to the account of Seidel Company in First National Bank of St. Louis (hereinafter "cashing bank"). Cashing bank endorsed the checks and processed them for payment. Issuing bank promptly paid on each check. After many renewals of the loans and only $9,400.00 in payments against principal, the loans were in default in 1975.

In 1978, issuing bank sued husband, wife, and Jerome for the balance due of $20,-589.72, plus interest and attorney fees. It also sued cashing bank on its statutory warranty that the endorsements were all genuine. Section 400.4–207, RSMo.1978. The trial court gave issuing bank judgment against husband and Jerome, but denied judgment against wife and cashing bank. Issuing bank appeals only the part of the judgment pertaining to cashing bank. We affirm.

Issuing bank asserts error in all of the trial court's several conclusions of law. We hold the forged endorsements were effective under § 400.3–405(1)(b), therefore no liability against cashing bank may be predicated on cashing bank's guarantee of prior endorsements. That section provides:

(1) An endorsement by any person in the name of a named payee is effective if

(b) A person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument;

Issuing bank did not intend for wife to have an interest in the check. This holding makes it unnecessary for us to consider the other contentions of issuing bank.

Issuing bank also complains about the admission of interrogatory evidence. We assume, without holding, that the interrogatory evidence was not admissible. Our standard of review is governed by Rule 73.01. The facts showing the forged endorsement effective pursuant to § 400.3–405(1)(b) are as follows:

In 1969 and 1970, husband and Jerome were the principal stockholders and officers of Seidel Coal and Coke Company, Inc. and interrelated "Seidel Companies" (hereinafter "Seidel Co."). Wife was married to husband in 1969 and 1970. Wife had no financial or other legally cognizable interest in Seidel Co.

In the late summer or fall of 1969, Seidel Co. through husband and Jerome sought a loan from issuing bank for working capital for the business. Neither Seidel Co., husband, wife nor Jerome had any account of personal banking relationship with issuing bank. On August 29, 1969, issuing bank determined that the Seidel Co. was not creditworthy. Thereafter the loan application of husband, wife and Jerome, dated October 21, 1969, was prepared by agents of issuing bank and presented to its loan committee for approval. The purported applicants were Jerome, husband and wife, but the purpose was working capital for Seidel Co. and the address listed for the applicants is the Seidel Co.'s corporate address, 3524 Washington.

The note was sent to this Washington address for Jerome and husband to sign. Wife's signature was forged. At the time the loan was made and the note executed, wife was not asked to come to the bank, nor was a financial statement obtained from

her, although it was customary and prudent banking practice to do so. Wife had no contact with issuing bank until 1975, after default, when she was asked to come to issuing bank to confirm the forgery of her signature on the notes and checks in question. Wife knew nothing about the loan until that time.

This loan and a second loan in 1970 were unsecured loans. They were approved initially by the Seidel's late friend, Phillip Lichenstein, the issuing bank's chief executive officer and principal stockholder. The loan was formally approved on October 21, 1969.

Issuing bank issued its cashier's check for $15,000.00 dated October 21, 1969, payable to husband, wife and Jerome in consideration for execution of the note. Wife's signature was forged on the cashier's check. The check, bearing the purported endorsements of all three named payees, was deposited to the Seidel Co. account at cashing bank. After the check had cleared normal banking channels bearing cashing bank's stamp of "P.E.G." (prior endorsements guaranteed), issuing bank paid on the check in October of 1969.

A similar note and cashier's check for $15,000.00 were executed November 30, 1970. Again wife's signature was forged on both instruments.

Renewal notes to issuing bank dated March 10, 1975 and June 9, 1975 show on their face that wife's signature was "by M.E.S.," her husband. Issuing bank did not witness the signing of any of the renewal notes. No demand was made on cashing bank for payment on the basis of the forged endorsements until October 3, 1978.

In the succeeding years after 1970, payments on the notes by Seidel Co., from time to time, were made to issuing bank. The total of these payments was $9,410.28, leaving an unpaid balance of $20,589.72, plus interest. During those years, correspondence by issuing bank relating to this matter was addressed to the corporate address of Seidel Co.

There was substantial evidence from which the trial court found issuing bank drew the cashier's checks with the intention that wife have no interest in them. Thus by operation of § 400.3–405(1)(b), the forged endorsements were effective and cashing bank is not liable. *See, Gordon v. State Street Bank & Trust Co.*, 361 Mass. 258, 280 N.E.2d 152 (1972); *Annot.*, 92 A.L. R.3d 268 (1979). Between the issuing bank, who contributed to the forgery by not seeing the wife sign, and the cashing bank, issuing bank should be the loser. *See, Twellman v. Lindell Trust Company*, 534 S.W.2d 83 (Mo.App.1976).

Judgment affirmed.

STEPHAN, P. J., and STEWART, J., concur.