Jim COOPER, Appellee,

v.

STOCK YARDS BANK OF OKLAHOMA CITY, OKLAHOMA, a Banking Corporation, Appellant.

No. 53516.

Court of Appeals of Oklahoma, Division No. 2.

Aug. 18, 1981.

Rehearing Denied Sept. 15, 1981.

Certiorari Denied March 25, 1982.

Released for Publication by Order of the Court of Appeals April 2, 1982.

O. B. Martin, Forest N. Simon, Oklahoma City, for appellee.

Jim K. Goodman, Gary A. Bryant, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellant.

BOYDSTON, Judge.

Bank appeals from a $33,151.37 judgment awarded to Bank's Customer who alleged Bank erroneously honored checks signed by unauthorized person. Bank alleges trial court erred by holding: (1) Customer need not prove he was damaged by wrongful payment though checks were paid to Customer's creditors; (2) each check is not a separate cause of action; and (3) Customer who did not review bank statement is not bound to protest irregularity within 14 days.

Trial was to the court after both sides waived jury trial. The judgment of a court sitting in cases of legal cognizance must be upheld if there is competent evidence in the record to support it. *Story v. Hefney*, Okl., 540 P.2d 562 (1975). In this case there is no material factual dispute which is essential to resolution of the appeal. The only real issue is whether trial court applied appropriate law to the facts. We apply the statutory standards of the Uniform Commercial Code and elementary law of damages and reverse.

I

In 1974, Plaintiff Jim Cooper (Customer) owned and operated Jim Cooper Trucking Co., a sole proprietorship. On February 25, 1974, he opened a business account at defendant Stock Yards Bank on which he and his wife were authorized to write checks. Paul Sewell became a partner in the business and his wife, V. N. Martin, was added to the signature card. Customer moved to California, where he took a permanent job with another trucking firm, and left Sewell in charge. Sewell dropped out of the business shortly after hiring Virgil Grogan as general manager. Customer authorized Grogan to sign checks on the bank account. Customer had daily phone contact with Grogan but did not return to Oklahoma City for more than a year.

On April 9, 1975, Grogan hired Betty Camp to keep the company books. He personally took her to the bank and "authorized" her to write checks on the company account. Thereafter, she signed almost all business checks. Grogan testified he personally supervised and authorized each check. Bank continued to routinely mail each account statement with cancelled checks to the business post office box as originally specified by Customer. Customer testified he never reviewed the statements. He admitted he was told by a trucker Ms. Camp was signing company checks "one to two months" (April 24 to May 24) before he came back from California. He never inquired or followed up this information until

he returned to Oklahoma City on June 24, 1975.

After a serious business dispute arose with Grogan, Customer severed ties with him and eventually brought suit against Bank, primarily to recover $33,151.37, the face amount of all checks signed by Betty Camp. This sum included a check for a small amount signed by a dispatcher and issued to a trucker in an emergency. This check cleared because Grogan personally called Bank and verbally approved it.

## II

The principal issue to be resolved concerns the court's ruling that Customer need not prove he was damaged by Bank's actions. The petition, filed on December 24, 1975, alleged Bank wrongfully honored checks dated "[b]etween May 2, 1975, and July 2, 1975." At trial, Customer proved: (1) he opened and owned the account; and (2) he did not personally authorize Betty Camp as signatory. He then introduced the checks into evidence and rested.

For defense, Bank offered testimony of Grogan and Ms. Camp that every check went to pay company fuel bills, truck-stop expenses, driver advances, utility bills, note payments on company owned trucks, employee salaries, truck insurance premiums, office supplies and other legitimate company expenses. On cross-examination Customer admitted the check exhibits shown him by counsel were made payable to legitimate company creditors. Customer did not controvert the Grogan and Camp testimony. Nor did he attempt to segregate or identify checks which did not inure to his benefit as owner of Jim Cooper Trucking Company. Indeed, trial court remarked:

> The Court is unable to decipher from the evidence and from the checks, and unable to distinguish in this evidence, those amounts which were paid for and on behalf of Jim Cooper Trucking Company in its legitimate business. . . .

In short, Customer proved Ms. Camp was unauthorized to sign checks on the account, but failed to prove he was damaged when Bank wrongfully honored the checks. Under these circumstances, Bank's breach is a technical one at most. It is elementary that a party may not recover for a breach of duty unless he also proves he was damaged by the breach. 23 O.S. 1971 § 21. *See Rollins v. Rayhill*, 200 Okl. 192, 191 P.2d 934 (1948) and; *Smock v. Carter*, 6 Okl. 300, 50 P. 262 (1897).

Customer erroneously argues his damages are presumed once proof is made Bank wrongfully honored Camp's signature. However, the law requires he must prove he suffered a loss. *Blomquist v. Zions First National Bank*, 18 Utah 2d 65, 415 P.2d 213 (1966); *Sullivan v. Farmers Bank & Trust Co.*, 145 F.Supp. 702 (E.D.Ky.1965). The law generally casts the burden of proof on the party who alleges the affirmative of an issue. Where that issue is damages, the complaining party is always in the most advantageous position to bear such burden. In this instance, even assuming, arguendo, Bank is required to shoulder the burden to overcome presumed damages, it offered uncontroverted evidence all checks went to pay legitimate debts. The court is left with nothing but positive proof Customer suffered no damages, absent a finding the court totally disbelieves the rebutting evidence.

## III

The second issue before us concerns the court's ruling that each check is not a separate cause of action.

At the time Customer introduced the checks into evidence, Bank objected on the ground more than $13,000 of the checks were dated either before May 2, 1975, or after July 2, 1975, and were therefore written outside the dates specifically alleged in the petition. Bank argues each check is a separate cause of action and it is improper to amend petition during trial or to include those checks on which the statute of limitations has run. 12 O.S.1971 § 95 (Second).

We hold each check constitutes a separate cause of action, which must be specifically pled and proved. Under these circumstances, when Customer sought to

introduce the extraneous checks, he was actually attempting to add causes of action after the statute of limitations had expired. *Holland v. Perrault,* Okl., 312 P.2d 976 (1957); *Sharum v. Sharum,* 101 Okl. 273, 225 P. 682 (1924). Amendment may not be made to petition at trial to state a new or separate cause of action. *Culver v. Mid-Continent Casualty Company,* Okl., 526 P.2d 496 (1974); *Turner v. Pitts,* 162 Okl. 246, 19 P.2d 563 (1933).

### IV

▇ Finally, we address the Court's ruling that Customer is not bound to report and protest irregularities in the account within 14 days from receipt of the monthly statement as provided in the Uniform Commercial Code. Customer fails to explain why he should not be held to the minimum standard of care imposed by the Code. Here, Ms. Camp started writing checks on April 9, 1975. Twelve days later, Bank mailed the account statement and cancelled checks to Customer's regular post address. It continued to do so, up to twice per month, during the entire contested period. Customer did not see the statements because he was living in California. He offers no excuse for not reviewing the statements. The trial court made a specific finding "[t]hat the Plaintiff, Mr. Cooper, was negligent in his failure to review the statements which were timely made by the bank ...." then, inexplicably ignored the plain wording of 12A O.S.1971 § 4–406, which states:

> (1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

> (2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed ... *the customer is precluded from asserting against the bank ... (b) an unauthorized signature ... on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days ....* (emphasis added)

We conclude the judgment should be reversed for several reasons. First, Customer failed to prove he was damaged; conversely, Bank proved all disputed checks were paid to legitimate creditors. Second, statute of limitations expired on all checks written in April, 1975, which were not included in the original pleadings. These checks would have been the only actionable items in that all the checks included in the original pleadings were written after the 14 day period after the bank statement was received by Customer. Under the standards set by the Uniform Commercial Code, Customer's failure to protest the checks bearing unauthorized signatures at that time precludes him from now asserting them against Bank.

We reverse and remand to trial court with instructions that judgment be entered in favor of defendant Bank. Costs are taxed against plaintiff.

BACON, P. J., concurs.

BRIGHTMIRE, J., concurs in result.