[No. B205314. Second Dist., Div. Five. June 4, 2009.]

UNLIMITED ADJUSTING GROUP, INC., et al., Plaintiffs and Appellants,
v.
WELLS FARGO BANK, N.A., Defendant and Respondent.

## Counsel

Lim, Ruger & Kim, Christopher Kim, Marc Manason, Bryan King Sheldon and George Busu for Plaintiffs and Appellants.

Barton, Klugman & Oetting, Charles J. Schufreider, Ronald R. St. John and Mark A. Newton for Defendant and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

This case presents a novel issue under California Uniform Commercial Code section 3404, subdivisions (b)(i) and (d).[1] Plaintiffs[2] lost more than $6 million in an investment fraud scheme. The perpetrator led plaintiffs to believe that brokerage accounts in their names would be opened with Carlin Equities Corporation, an existing broker-dealer, and induced plaintiffs to make checks payable to "Carlin Co.," "Carlin Corp.," and "Carlin Corporation." The culprit opened his own bank account at defendant and respondent Wells Fargo Bank, N.A. (Wells Fargo), under the fictitious business name "Carlin Co." He deposited plaintiffs' checks into that account and then appropriated the monies.

Section 3404, subdivisions (b)(i) and (d)[3] provide, in effect, that the drawer of a check may recover from a depositary bank on a comparative negligence basis if, inter alia, the depositary bank failed to use ordinary care in permitting a customer to deposit a check when the person who signed the check as, or on behalf of, the drawer (the "signer") did not intend the person identified as payee on the check to have an interest in the check. (§ 3404, subds. (b)(i), (d).) Plaintiffs asserted a claim pursuant to these provisions against Wells Fargo, alleging that Wells Fargo failed to exercise ordinary care when it allowed the perpetrator of the fraud to deposit plaintiffs' checks in his Wells Fargo account. A jury returned a verdict against plaintiffs and in favor of Wells Fargo.

Plaintiffs argue on appeal that the trial court erred by giving the jury instructions that, in effect, conflated the concepts of an intended payee, as determined under section 3110, with the "person identified as payee" (or the "named payee") referred to in section 3404, subdivision (b)(i). We agree that the jury instructions were erroneous, but conclude that plaintiffs were not prejudiced by the error. By its terms, section 3404, subdivision (b)(i) applies

---

[1] Statutory references are to the California Uniform Commercial Code (sometimes the Code), unless stated otherwise.

[2] Plaintiffs and appellants are Unlimited Adjusting Group, Inc.; Park & Goodpeople, Inc.; Chong Cha Choe and Dae Chul Choi, Trustees of the Park & Goodpeople, Inc., Deferred Compensation Trust #1 Dated 10/5/2002; and Jung Ja Choi, Trustee of the Park & Goodpeople, Inc. Deferred Compensation Trust #2 Dated 10/5/2002 (plaintiffs). Plaintiffs are corporations or the trustees of trusts that are owned or controlled by Jung Ho Park, also known as John Park (Park).

[3] Relevant portions of these subdivisions are quoted in footnotes 7 and 9, *post.*

only when the signer does not intend the named payee to have an interest in the check. But the signer can have no such intent when the signer believes that the named payee and the intended payee are the same person or entity. The evidence at trial was undisputed that (1) plaintiffs issued checks payable to "Carlin Co.," "Carlin Corp." and "Carlin Corporation"; (2) plaintiffs intended those designations to refer to Carlin Equities Corporation; and (3) Carlin Equities Corporation was the intended payee of the checks. Because subdivision (b)(i) does not apply, plaintiffs' claim under section 3404, subdivision (d) fails as a matter of law. We therefore affirm the judgment.

## BACKGROUND

Won Charlie Yi solicited money from plaintiffs and other investors in the Korean-American community by representing that he would invest their money in brokerage accounts at Carlin Equities Corporation, a nationally recognized broker-dealer based in New York. Yi, however, did not invest the money he received from plaintiffs at all. Instead, Yi registered the name "Carlin Co." as a fictitious name under which he did business. He opened a bank account at Wells Fargo in the name of "Won Charlie Yi dba Carlin Co." Between January and September of 2003, Yi induced plaintiffs to write eight checks, totaling $6.3 million, payable to "Carlin Co.," "Carlin Corp." or "Carlin Corporation." Yi deposited the checks into his Wells Fargo account and absconded with plaintiffs' money. He was later apprehended by federal authorities and convicted of a variety of criminal fraud charges.[4]

Plaintiffs sued Wells Fargo to recover their losses. In their operative second amended complaint, plaintiffs asserted, inter alia, a statutory negligence claim under section 3404, subdivisions (b)(i) and (d). That claim was tried to a jury, which returned a special verdict in favor of Wells Fargo.[5] The trial court entered judgment for Wells Fargo. Plaintiffs timely appealed.

[4] Plaintiffs' request for judicial notice is granted as to the judgment and probation/commitment order of the United States District Court for the Central District of California. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) Plaintiffs' request is denied as to the Department of Corporations press release. That press release was issued has no relevance to the issues on appeal, and the statements of fact contained in the press release are not subject to judicial notice. (See *People v. Villa* (2009) 45 Cal.4th 1063, 1067, fn. 2 [90 Cal.Rptr.3d 344, 202 P.3d 427]; *Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1235, fn. 1 [101 Cal.Rptr.2d 558].)

[5] Plaintiffs had asserted several other common law and statutory claims, including claims under section 3404, subdivisions (a) (the "imposter" rule) and (b)(ii) (the "fictitious payee" rule). All of plaintiffs' other claims were resolved against them either by summary adjudication or at trial. Plaintiffs have appealed only with respect to their claim under section 3404, subdivisions (b)(i) and (d).

## DISCUSSION

### A.  *Relevant Legal Principles*

█  Divisions 3 and 4 of the Code govern, respectively, negotiable instruments and bank deposits and collections. (See generally 4 Witkin, Summary of Cal. Law (10th ed. 2005) Negotiable Instruments, § 2, p. 358.) As relevant here, a "check" is a draft that is payable on demand and drawn on a bank. (§ 3104, subd. (f).) The "drawer" of a check is the person who is ordering payment (here, plaintiffs). (§ 3103, subd. (a)(3).) The "drawee" or "payor bank" is the bank on which the check is drawn—that is, the bank ordered by the check to make payment. (§§ 3103, subd. (a)(2), 4105, subd. (3).)

█  Usually, a check will be payable to the order of an identified person. That person is generally referred to as the "payee." (§ 3109, subd. (b); see *Schweitzer v. Bank of America* (1941) 42 Cal.App.2d 536, 543 [109 P.2d 441]; see generally 4 Witkin, Summary of Cal. Law, *supra*, Negotiable Instruments, § 17, pp. 373–374.) The identity of the payee is not determined by the name written on the check. Rather, the payee is determined by the intent of the person who signs the check as, or on behalf of, the drawer—that is, the signer. (§ 3110, subd. (a).) This rule is of particular importance when it is unclear from the face of the check to whom the check is payable. For example, if a check is made payable to "John Smith" and two or more people share that name, the intent of the signer will determine which John Smith is the payee. (U. Com. Code Com., 23A pt. 2 West's Ann. Cal. Com. Code (2002) foll. § 3110, com. 1, pp. 213–214.) Similarly, if the signer intended that John Smith would be the payee but misidentified John Smith as "John Jones" on the check, the payee is nevertheless John Smith, not some other person named John Jones. (*Ibid.*) The intent of the signer controls even if the check is forged. For example, if an unauthorized employee forges the signature of his or her employer on a check drawn on the employer's account, the intent of the forger-signer determines the identity of the payee. (*Ibid.*; see generally 4 Witkin, *supra*, Negotiable Instruments, § 17, pp. 373–374; 6 Hawkland and Lawrence, Uniform Commercial Code Series (1999 rev.) § 3-110:1, pp. 3-106 to 3-108.) For purposes of clarity, we use the term "intended payee" to denote the person to whom the signer intended the check to be payable. We use the term "named payee" to denote the person identified on the check as the payee.

■ The intended payee may negotiate a check by indorsing it and depositing it in his or her bank account. (See *Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 885, fn. 16 [83 Cal.Rptr.3d 146] (*Mills*).) The bank to which the intended payee negotiates the check—that is, the first bank to take the check—is the "depositary bank."[6] (§§ 3103, subd. (c), 4105, subd. (2) [" 'Depositary bank' means the first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter."]; see generally Hagedorn and Bailey, Brady on Bank Checks: The Law of Bank Checks (2008) ¶ 11.01 (Brady).) Some provisions of the Code use the term "collecting bank." That term includes a depositary bank, if the depositary bank is not also the payor bank. (§ 4105, subd. (5) [" 'Collecting bank' means a bank handling an item for collection except the payor bank."].) In this case, Wells Fargo was both the depositary bank and a collecting bank. Usually, the depositary bank will submit the check for collection through the check clearing system, ultimately receiving payment from the payor bank. (See *Mills, supra*, 166 Cal.App.4th at p. 885, fn. 16; Brady, *supra*, ¶ 11.04.)

■ Some provisions of divisions 3 and 4 serve to allocate losses due to the payment of unauthorized or fraudulent checks. In general, those provisions place the burden of loss on the party best able to prevent or to insure against the loss. (See 6 Hawkland and Lawrence, Uniform Commercial Code Series, *supra*, § 3-404:1, p. 3-471; 2 White and Summers, Uniform Commercial Code (5th ed. 2008) § 18-1, p. 239.) One such provision is section 3404. That section allocates to the drawer losses in certain circumstances in which it is presumed the drawer failed to exercise due care to avoid the loss. (See U. Com. Code Com., 23A pt. 2 West's Ann. Cal. Com. Code, *supra*, foll. § 3404, com. 3, p. 418; 6 Hawkland and Lawrence, *supra*, § 3-404:1, p. 3-472.)

Relevant here is section 3404, subdivision (b)(i).[7] This subdivision, enacted in its present form as part of the 1992 revisions to division 3 of the Code

---

[6] " 'When a payee receives a check, the payee becomes its holder. The payee may negotiate the check by indorsing it and transferring it to another person, who then becomes its holder. In the normal course of events, a check is negotiated to a depositary bank, which then submits the check for collection through the check clearing system. If the check is indorsed in blank, it then becomes payable to bearer, and can be negotiated thereafter simply by delivery (just like cash).' " (*Mills, supra*, 166 Cal.App.4th at p. 885, fn. 16.)

[7] Section 3404, subdivision (b) provides in relevant part: "If (i) a person whose intent determines to whom an instrument is payable (subdivision (a) or (b) of Section 3110) does not intend the person identified as payee to have any interest in the instrument . . . , the following rules apply until the instrument is negotiated by special indorsement: [¶] (1) Any person in possession of the instrument is its holder. [¶] (2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection." An indorsement is deemed to be "in the name of the payee" for purposes of subdivision (b)(2) if

(Stats. 1992, ch. 914, § 6, pp. 4346, 4366), essentially restates former section 3405, subdivision (1)(b), which in turn was derived from section 9, subdivision (3) of the Negotiable Instruments Law, codified in California as Civil Code former section 3090, subdivision (3).[8] (See U. Com. Code Com., 23A pt. 2 West's Ann. Cal. Com. Code, *supra*, foll. § 3404, com. 2, p. 416.) In effect, subdivision (b)(i) shields a bank from liability for negotiating an unauthorized or fraudulent check by deeming an indorsement to be effective if (1) the signer of the check did not intend that the named payee would have an interest in the check—that is, the named payee was not the intended payee; and (2) the check was either indorsed in a name substantially similar to that of the named payee, or deposited to an account in a name substantially similar to that of the named payee. (§ 3404, subds. (b)(i), (c).) "In applying section 3-404(b), the key issue is whether the person signing as or on behalf of the drawer . . . intended that the [named] payee have no interest in the [check]. . . . [¶] . . . [T]he section applies where the . . . drawer issues an instrument intending that the named payee have no interest in the instrument. Because the drawer . . . knows that there will not be a proper indorsement, . . . it is unfair to shift the loss to a subsequent purchaser or payer whose fault is minimal." (6 Hawkland and Lawrence, Uniform Commercial Code Series, *supra*, § 3-404:5, pp. 3-482 to 3-483, fns. omitted.)

By way of example, in a typical case in which section 3404, subdivision (b)(i) would apply, an employee of a company makes out a check on the employer's account to a supplier of the employer. The employee intends when he signs the check that it will never be paid to the supplier. Instead, the employee intends to forge an indorsement in the supplier's name and deposit the check to his or her own account, or to another account controlled by the employee or a confederate. In such a case, the employee—the "person whose intent determines to whom an instrument is payable" (§ 3404, subd. (b)(i))— never intended the supplier to have an interest in the check. (See U. Com. Code Com., 23A pt. 2 West's Ann. Cal. Com. Code, *supra*, foll. § 3404, com. 2, p. 417.)

---

the indorsement "is made in a name substantially similar to that of the payee" or the check is deposited "to an account in a name substantially similar to that of the payee." (§ 3404, subd. (c).)

[8] Former section 3405, subdivision (1)(b) stated, "(1) An indorsement by any person in the name of a named payee is effective if [¶] . . . [¶] (b) A person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument." (Stats. 1963, ch. 819, § 1, pp. 1849, 1903.) Civil Code former section 3090, subdivision (3) stated, "The instrument is payable to bearer— [¶] . . . [¶] (3) When it is payable to the order of a fictitious or nonexistent person, and such fact was known to the person making it so payable . . . ." This provision was held by the California Supreme Court to apply to " ' "one who, though named as payee in a check, has no right to it, or the proceeds of it, because the drawer of it so intended . . . ." ' " (*Union B. & T. Co. v. Security-First Nat. Bk.* (1937) 8 Cal.2d 303, 307–308 [65 P.2d 355].)

■ As this example illustrates, the typical case under section 3404, subdivision (b)(i) involves a situation in which the signer issues the check with fraudulent or other wrongful intent. However, fraudulent intent of the signer is not necessarily required. Courts in at least two other jurisdictions have applied their corresponding Uniform Commercial Code provisions in circumstances not involving signer fraud. (See *Getty Petroleum Corp. v. American Express Travel Related Servs. Co., Inc.* (1997) 90 N.Y.2d 322 [683 N.E.2d 311, 315–317] [U. Com. Code, former § 3-405, subd. (1)(b) allocated to drawer loss in forged indorsement case when oil company issued checks to dealer-owned gas stations never intending for checks to be negotiated]; *American Nat. Bank in St. Louis v. Seidel* (Mo.Ct.App. 1981) 622 S.W.2d 19, 21 (*Seidel*) [under U. Com. Code, former § 3-405, subd. (1)(b), when lending bank made check payable jointly to borrower and borrower's wife, lending bank did not intend wife to have an interest]; see generally 6 Anderson, Uniform Commercial Code (3d ed. 1998) § 3-405:46, p. 467 [culpable mental state not required under U. Com. Code, former § 3-405]; cf. 6 Hawkland and Lawrence, Uniform Commercial Code Series, *supra*, § 3-404:5, p. 3-483, fn. 6 [describing as "questionabl[e]" the Missouri court's holding in *Seidel*].)

In the usual case, section 3404 is asserted by a bank as a *defense* against a drawer's claim of improper payment, rather than—as in this case—by the drawer as an affirmative basis for relief against the bank. (See, e.g., *Title Ins. Co. v. Comerica Bank—California* (1994) 27 Cal.App.4th 800, 803–804 [32 Cal.Rptr.2d 735].) This is because a drawer typically will seek compensation for payment of an unauthorized or fraudulent check from his or her own bank—that is, the payor bank—on the theory that the check was not properly payable. (§ 4401, subd. (a) [bank may charge only items that are "properly payable"]; see U. Com. Code Com., 23A pt. 2 West's Ann. Cal. Com. Code, *supra*, foll. § 3404, com. 3, p. 418 ["Normally, the loss in forged check cases is on the drawee bank that paid the check."]; U. Com. Code Com., 23A pt. 2 West's Ann. Cal. Com. Code, *supra*, foll. § 3420, com. 1, p. 508 ["drawer has an adequate remedy against the payor bank for recredit of the drawer's account"]; 2 White and Summers, Uniform Commercial Code, *supra*, § 18-3, pp. 244–246.) The payor bank may then seek compensation from the depositary bank (or other collecting bank) on the theory that the depositary bank breached its warranties as the transferor or presentor of the check. (§§ 3416–3417, 4207–4208; see 4 Witkin, Summary of Cal. Law, *supra*, Negotiable Instruments, §§ 49–50, pp. 409–413; 2 White and Summers, *supra*, § 18-7, pp. 269–274.) The payor and collecting banks may defend against such recredit and warranty claims by asserting that the unauthorized or fraudulent indorsement should be deemed effective pursuant to section 3404.

■ Although the general rule is that the drawer bears the loss in cases governed by section 3404, subdivision (b), that rule is modified by section

3404, subdivision (d).[9] That subdivision applies principles of comparative negligence to permit the drawer to recover from, inter alia, a depository bank that failed to exercise ordinary care in taking for collection a check subject to subdivision (b)(i). As the California Uniform Commercial Code comments explain, "in some cases the person taking the check might have detected the fraud and thus have prevented the loss by the exercise of ordinary care. In those cases, if that person failed to exercise ordinary care, it is reasonable that that person bear loss to the extent the failure contributed to the loss. . . . [T]he most likely defendant is the depository bank that took the check and failed to exercise ordinary care." (U. Com. Code Com., 23A pt. 2 West's Ann. Cal. Com. Code, *supra*, foll. § 3404, com. 3, p. 418.) Accordingly, if plaintiffs could demonstrate that section 3404, subdivision (b)(i) applied to the checks at issue in this case, section 3404, subdivision (d) would provide the basis for a statutory negligence claim by plaintiffs against Wells Fargo.

### B. *The Trial Court Erred in Instructing the Jury*

We review de novo whether the jury instructions correctly stated the law. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82 [89 Cal.Rptr.3d 34].) Statutory interpretation also is a question of law that we review de novo. (*Van Horn v. Watson* (2008) 45 Cal.4th 322, 326, fn. 5 [86 Cal.Rptr.3d 350, 197 P.3d 164]; *The Fifth Day, LLC v. Bolotin* (2009) 172 Cal.App.4th 939, 947 [91 Cal.Rptr.3d 633].)

Plaintiffs argue, in essence, that the jury instructions erroneously confused the concepts of the *intended* payee as determined under section 3110, subdivision (a), and a *named* payee—that is, the "person identified as payee"—in section 3404, subdivision (b)(i). We agree.

As relevant here, the trial court instructed the jury, "Plaintiffs have asserted a claim for statutory negligence against Wells Fargo. [¶] In order to prevail on their claims for statutory negligence . . . , the plaintiffs have the burden of proving . . . : [¶] . . . [¶] B. The plaintiffs *intended that the payee of the checks have no interest* in the funds represented by the checks . . . ." (Italics

---

[9] Section 3404, subdivision (d) states in relevant part, "With respect to an instrument to which subdivision . . . (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss."

added.) The trial court further instructed, "In determining whether the plaintiffs intended that the payees of the checks have no interest in the checks, you must determine the payee of the checks. The payee of the checks is determined by examining all of the facts and circumstances present to determine the intention of the plaintiffs at the time they signed the checks. *The payee is the person or entity to whom the signer intended the checks to be paid, even if that person's or entity's name is different from the payee listed on the checks.* It is who the maker intends the payee to be that is controlling in determining the intended payee, not the name written on the check." (Italics added.)

The instructions thus presented the jury with the inherently contradictory proposition that plaintiffs were required to prove that they did not intend the checks to be paid to the person to whom they intended the checks to be paid. The jury's confusion and frustration is understandable.[10]

█ Section 3404, subdivision (b)(i) requires no such proof. That provision does *not* state that it applies if the signer did not intend *the payee* to have an interest in the check. Rather, it applies if the signer did "not intend the person *identified as payee* to have" an interest in the check. (§ 3404,

---

[10] It appears that, as originally submitted to the jury, question 2 of the special verdict form asked the jury to determine as to each plaintiff, "Did plaintiff . . . intend that the payees of the checks (as defined elsewhere in these instructions) have no interest in the funds represented by the checks?" During deliberations, the jury sent a message to the trial judge that question 2 was confusing. The foreperson explained that there was "a lot of confusion as to who the payee is in this circumstance," and that the jury felt that the question contained a double negative. The trial court instructed the jury "the attorneys agree that the intent of the payee [*sic*] was Carlin Equities Corporation. And that's what that means. Not whoever the name was the check was made out to." The trial court also amended question 2 to read, "Did plaintiff . . . intend that the payee of the checks (as defined elsewhere in these instructions) have an interest in the funds represented by the checks?" Plaintiffs objected that the revised question 2 "takes away the payee, who the payee is on the check." Later, the jury sent a communication that stated, as relevant here, "We feel handcuffed by question[] 2 . . . , but the instructions aren't allowing us to move on to question 4, where, we'd like to be. Please explain the law behind question[] 2 . . . ." As discussed, question 2 addressed plaintiffs' "named payee not intended to have an interest" claim under section 3404, subdivision (b)(i). Question 4 asked the jury to determine whether Wells Fargo failed to exercise ordinary care in taking the checks for deposit, pursuant to section 3404, subdivision (d). The jury could reach question 4 only if it first found that plaintiffs did not intend the "payees" to have an interest in the funds represented by the checks. The foreperson told the trial court that the jurors felt "cheated out of sitting here for these weeks" because "it's all coming down with the payees on the checks . . . . And it seems like the answer has already been given to us in the instructions . . . . There's concern it's all coming down to the payee, which everybody said is Carlin Equities Corp." The trial court responded, "Yes." The foreperson stated, "[W]hat we're getting from the instructions is that's automatically Carlin Equities Corp. and so it's like everything's been answered. And if it's all answered, we are wondering why are we here[?]"

subd. (b)(i), italics added.) We read the phrase "person identified as payee" to refer to the *named* payee, not the *intended* payee. To read it otherwise would achieve, as the jury instructions here illustrate, an absurd result. ■ (See *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [64 Cal.Rptr.3d 661, 165 P.3d 462] [statutes should be interpreted to avoid unreasonable, impractical or arbitrary results].) In the circumstances of this case, a correct instruction would have charged the jury that plaintiffs were required to prove that the persons identified as payees on the checks (the named payees) were not the intended payees as determined under section 3110, subdivision (a), and that the signer so intended. The case examples in the official comments are consistent with this conclusion. (U. Com. Code Com., 23A pt. 2 West's Ann. Cal. Com. Code, *supra*, foll. § 3404, com. 3, p. 418.) The trial court thus erred in instructing the jury.

### C. *Plaintiffs Were Not Prejudiced*

Our conclusion that the trial court erred does not dispose of plaintiffs' appeal. We may reverse only if the error was prejudicial. " '[T]here is no rule of automatic reversal or "inherent" prejudice applicable to any category of civil instructional error, whether of commission or omission. A judgment may not be reversed for instructional error in a civil case "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." [Citation.]' (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298]; see Cal. Const., art. VI, § 13.) Thus, . . . we must not only determine whether the trial court committed error, but whether the error resulted in a 'miscarriage of justice.' " (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1094 [74 Cal.Rptr.3d 235]; see *County of Monterey v. W.W. Leasing Unlimited* (1980) 109 Cal.App.3d 636, 642 [167 Cal.Rptr. 12] ["Where the judgment is ' "the only proper one in the state of the record," ' even substantial error is not reversible. . . . Failure to give the requested instruction [which arguably should have been given] was not prejudicial error." (Citation omitted.)].)

The undisputed evidence at trial was that plaintiffs issued the checks at Park's direction and that Park was, in effect, the signer[11]—that is, "a person whose intent determines to whom an instrument is payable" for purposes of

---

[11] Park was the owner of or controlled plaintiffs. (See fn. 2, *ante*.) Park physically signed some of the checks, but not all. Those he did not sign, he prepared for signature by the trustees—including filling in the payee line—and the trustees signed the checks at Park's direction and in his presence.

sections 3110, subdivision (a) and 3404, subdivision (b)(i). Accordingly, in the circumstances of this case, section 3404, subdivision (b)(i) would apply only if Park did not intend the named payee ("Carlin Co." or "Carlin Corp." or "Carlin Corporation") to be the intended payee ("Carlin Equities Corporation"). If this were so, then plaintiffs could try to prove that Wells Fargo was negligent under section 3404, subdivision (d). The undisputed evidence at trial, however, established the contrary. Thus, plaintiffs cannot recover under section 3404.

Plaintiffs' argument that section 3404, subdivision (b)(i) applies to this case is premised on Park's omission of the word "Equities" from the payee designation on the checks. But to accept plaintiffs' argument would mean that section 3404, subdivision (b)(i) applies in *every* case in which a drawer unknowingly or mistakenly misidentifies a payee—even when, as here, the variance between the payee's actual name and the designation on the check is not substantial. (See *Lusitania Sav. Bank, FSB v. Progressive Cas. Ins. Co.* (3d Cir. 2005) 58 U.C.C. Rep.Serv.2d 689 [2005 WL 1586618, p. *3] [indorsement in name of "TCS" was substantially similar to payee, "TCS America"]; see also § 3404, subd. (c); 6 Hawkland and Lawrence, Uniform Commercial Code Series, *supra*, § 3-404:2, p. 3-474.) The text of section 3404, subdivision (b)(i) cannot reasonably be read to support such an interpretation, and plaintiffs cite no authority to support their position.

■ Although section 3404, subdivision (b)(i) might apply in some circumstances when the signer lacks intent to *defraud*, the plain language of subdivision (b)(i) nevertheless includes an element of intent—that is, the signer's *intent* that the named payee have no interest in the check. No such intent is present when, as in this case, the signer believes the named payee and the intended payee are the same person or entity. As discussed, section 3404, subdivision (b)(i) "applies where the . . . drawer issues an instrument intending that the named payee have no interest in the instrument. *Because the drawer . . . knows that there will not be a proper indorsement, . . .* it is unfair to shift the loss to a subsequent purchaser or payer whose fault is minimal." (6 Hawkland and Lawrence, Uniform Commercial Code Series, *supra*, § 3-404:5, pp. 3-482 to 3-483, fns. omitted, italics added.) This requirement of knowledge on the part of the signer hearkens back to the origins of subdivision (b)(i) in section 9, subdivision (3) of the Negotiable Instruments Law, which applied only if "such fact *was known* to the person making [the check] so payable." (Civ. Code, former § 3090, subd. (3), italics added; see fn. 8, *ante*.) The requirement of knowledge is also consistent with *Seidel, supra*, 622 S.W.2d 19—the case principally relied upon by plaintiffs—in

which it was clear that the bank issuing the check knew that a named payee (the borrower's wife) was a different person than the intended payee (the borrower). (*Id.* at p. 21.)[12]

In this respect, *Mills, supra,* 166 Cal.App.4th 871, is instructive. In that case, investors in a company called Third Eye Systems, LLC—an existing entity—wrote several checks payable to "Third Eye Systems, LLC," one to "Third Eye" and one to "Third Eye Systems." (*Id.* at p. 876.) The checks were deposited into the account of a different entity, Third Eye Systems Holdings, Inc. The checks were not properly endorsed from Third Eye Systems, LLC, to Third Eye Systems Holdings, Inc. (*Ibid.*) The investors asserted a statutory negligence claim, among others, against the depositary bank. (*Id.* at pp. 887–888.) The trial court granted the depositary bank's demurrer as to the statutory negligence cause of action. (*Id.* at pp. 875, 878.) Although the investors had in their complaint identified section 4103, subdivisions (a) and (e) as the basis for their statutory negligence claim (166 Cal.App.4th at p. 888), the investors asserted on appeal, inter alia, that the facts recited in the complaint stated a statutory negligence claim under section 3404. The Court of Appeal affirmed the judgment of dismissal. The appellate court said that "none of those statutory provisions" upon which the investors relied "establishe[d] that a drawer has a statutory cause of action for negligence against a depositary bank which deposits checks with missing endorsements." (166 Cal.App.4th at p. 889.) The court stated, "The instant case does not fall within the scope of section 3404, subdivisions (a) or (b) because it does not concern imposters or a check made out to a fictitious person or to a person whom the drawer did not intend to pay. Thus, Plaintiffs may not rely on section 3404 to support their cause of action for statutory negligence against [the depositary bank]." (*Id.* at p. 890.) The court in *Mills* thus read section 3404, subdivision (b)(i) in the same way as do we.

The undisputed evidence in this case established that Park lacked the requisite intent to bring this case within section 3404, subdivision (b)(i). Park testified that Yi told him that plaintiffs' money and investment securities would be held by Carlin Equities Corporation. Park testified that "Charlie Yi, he decide which [stocks] to buy and sell or hold. And by his advice, and he—he tell the Carlin agree to buy and sell. And they buy and sell. They [Carlin Equities Corporation] hold the stock there. In case there's no good

---

[12] Section 3404, subdivision (b)(i) might also apply in cases in which there is a named payee but *no* intended payee, as illustrated by *Getty Petroleum Corp. v. American Express Travel Related Servs. Co., Inc., supra,* 683 N.E.2d 311. This is not such a case.

time to buy the stock, money will be there as like money market." Yi presented to Park and plaintiffs signed, among other documents, limited powers of attorney in favor of Carlin Equities Corporation and agreements entitled "Carlin Equities Corporation Professional Trader Supplemental Agreement." Park and the trustees all "agree[d] to invest the moneys through Carlin Equities Corp."

Park filled out the payee line on each of the checks. Park stated, "Charlie [Yi] said, instead of writing Carlin Equity Corp. And you just—you can write Carlin Corp. and like everybody else, and money will go to New York. And since corporation and nobody could—to steal anything." Park made the checks payable to Carlin Corp., Carlin Corporation or Carlin Co. Park testified:

"Q. And when you wrote 'paid to the order of Carlin Corporation,' which entity did you mean?

"A. The—the Carlin Equities Corp. in New York, the money that Charlie said the money will go there and secure and manage by them."

Yi gave Park account statements that purported to be from Carlin Equities Corporation. The account statements purported to show credit entries for the checks issued by plaintiffs and delivered by Park to Yi. The statements led Park to believe that "Carlin has our invest[ment] money there."

Park testified that the intended payee of the checks was Carlin Equities Corporation. Park further testified that he intended the payee designation on each of the checks to refer to Carlin Equities Corporation. Park thus intended to identify Carlin Equities Corporation as the payee when he wrote the checks, and he expected that the checks would properly be indorsed by Carlin Equities Corporation, notwithstanding his omission of the word "Equities" from the payee designation. Because the intended payee and the person identified by Park as the payee were, in effect, both Carlin Equities Corporation, this was not a case in which the "person whose intent determines to whom an instrument is payable . . . does not intend the person identified as payee to have any interest in the instrument." (§ 3404, subd. (b)(i).)

We hold as a matter of law that section 3404, subdivision (b)(i)—and therefore subdivision (d)—did not apply to this case. The trial court's error in instructing the jury was therefore harmless.

## DISPOSITION

The judgment is affirmed. Defendant shall recover its costs.

Armstrong, Acting P. J., and Kriegler, J., concurred.

A petition for a rehearing was denied July 6, 2009.